1
2
3
4
5
6
7
8    **IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
     **IN AND FOR THE COUNTY OF KING**
9
10                                          | CASE NO.: 18-2-12456-5 SEA
11   JAMES WINN,                            |
                                            | **PLAINTIFF'S COMPLAINT FOR DAMAGES**
12                        Plaintiff,        |
                                            | I.    SEXUAL HARASSMENT (*QUID PRO*
13                                          |       *QUO*) IN VIOLATION OF WA LAW
     vs.                                    |       AGAINST DISCRIMINATION ("WLAD")
14                                          |       (RCW § 49.60)
     BOYD TINSLEY,                          |
15                                          |
16                        Defendant.        | II.   SEXUAL HARASSMENT (HOSTILE
                                            |       WORK ENVIRONMENT) IN VIOLATION
17                                          |       OF WLAD (RCW § 49.60)
18                                          | III.  RETALIATION IN VIOLATION OF
19                                          |       WLAD (RCW § 49.60) DISCRIMINATION
                                            |       AGAINST PERSON OPPOSING UNFAIR
20                                          |       PRACTICE
21                                          | IV.   TORT OF CONSTRUCTIVE DISCHARGE
22                                          |       (WA STATE COMMON LAW TORT)
23

24   **COMES NOW** Plaintiff, JAMES WINN, by and through his attorneys of record,

25   STEPHANIE HENDERSON STOCKER of HENDERSON LAW GROUP, PLLC, and JASON

26   HATCH, and for the causes of action alleged herein states, alleges, and complains as follows:

27
28
     PLAINTIFF'S COMPLAINT FOR DAMAGES – 1                    Henderson Law Group, PLLC
                                                              1800 Cooper Point RD SW, Bldg. One
                                                              Olympia, WA 98502
                                                              Tel. (360) 943-7710 Fax (360) 943-2782
                                                              www.hendersonlawgroup.com

## I. INTRODUCTION

1.     This is an action for relief brought by Plaintiff JAMES WINN ("Plaintiff WINN") against his former employer, Defendant BOYD TINSLEY ("Defendant" or "Defendant TINSLEY"). Plaintiff WINN was a street musician in San Francisco, CA, when he was discovered in 2007 by Defendant TINSLEY. Defendant TINSLEY hired Plaintiff WINN and created a "boy band" called Crystal Garden. The band members of Crystal Garden were: Mr. Joel Jacobs (drums); Mr. Mycle Wastman (vocals); Mr. Charlie Csontos (bass); Mr. Matt Frewen (drums); and Plaintiff WINN (trumpet).

2.     In the years that followed, Plaintiff WINN was catapulted by Defendant TINSLEY into a world of luxury and living his lifelong dream of playing music worldwide – a dream come true for Plaintiff WINN.   Traveling the world playing live shows, recording music with international music talent, 5-star hotels, first-class food, drinks & friends – all supplied by Defendant TINSLEY for his employee, Plaintiff WINN.

3.     As the facts below describe, Defendant TINSLEY began sexually harassing his employee, Plaintiff WINN, in 2015 – sexually flirting with verbal sexual comments, physically touching, sexting – including communicating to Plaintiff WINN that he provided "this life" and "these things" to Plaintiff WINN and that Plaintiff WINN "owed him." Defendant TINSLEY's harassment towards Plaintiff WINN was nothing short of disturbing to Plaintiff WINN – the harassment was in no way welcome and destroyed Plaintiff WINN emotionally.

4.     After months of enduring Defendant TINSLEY's sexually-charged harassment as a cost for maintaining his employment with Defendant TINSLEY, Plaintiff WINN was left with no choice but to walk away from the dream-turned-nightmare that he had been living. Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES – 2

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 2 of 91

TINSLEY opened doors for Plaintiff WINN to the musical world that Plaintiff WINN had previously only imagined – a dream lived and tragically lost for Plaintiff WINN because of Defendant TINSLEY's sexually predatory harassment.

Examples of communications from Defendant TINSLEY to Plaintiff WINN include:



5. Plaintiff WINN has the legal basis to bring an action for relief against his former employer, Defendant TINSLEY. The facts herein outlined and applicable Washington State law support the following four claims for Plaintiff WINN against Defendant TINSLEY:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 3

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 3 of 91

## 6. Sexual Harassment – *Quid Pro Quo* in Violation of RCW § 49.60

Defendant TINSLEY sexually harassed Plaintiff WINN under the *quid pro quo* theory in violation of Washington State's Law Against Discrimination (hereinafter, "WLAD") (RCW 49.60) when Defendant TINSLEY required his employee (Plaintiff WINN) to submit to unwelcome sexual conduct as a condition of receiving pay and/or tangible job benefits.

## 7. Sexual Harassment – Hostile Work Environment in Violation of RCW § 49.60

Defendant TINSLEY sexually harassed Plaintiff WINN under the hostile work environment theory in violation of RCW 49.60 when Defendant TINSLEY directed conduct or behavior toward his employee (Plaintiff WINN) because of Plaintiff WINN's sex that created an intimidating, hostile, or offensive working environment for Plaintiff WINN.

## 8. Retaliation in Violation of RCW § 49.60 – Discrimination Against Employee Opposing Unfair Practice Protected by WLAD

Defendant TINSLEY retaliated against Plaintiff WINN in violation of RCW 49.60. Plaintiff WINN opposed Defendant TINSLEY's illegal activity several times, including but not limited to when he complained to Defendant TINSLEY following the November 2015 incident, making it clear to Defendant TINSLEY that the sex-based behavior was wrong, unwelcome, and needed to stop. Defendant TINSLEY thereafter continued to harass Plaintiff WINN, tying Plaintiff WINN's compliance with the sex-based demands to Plaintiff WINN's continued "success" with the band. Plaintiff WINN's submitting to Defendant TINSLEY's sexual demands equates to the adverse "tangible employment action" required to establish a retaliation claim under WLAD.

PLAINTIFF'S COMPLAINT FOR DAMAGES - 4

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 4 of 91

9. **Constructive Discharge – WA State Common Law Tort**

Defendant TINSLEY committed the Washington State Common Law Tort of Constructive Discharge against Plaintiff WINN when Defendant TINSLEY's sexual harassment of his employee (Plaintiff WINN) deliberately created intolerable working conditions for Plaintiff WINN that gave Plaintiff WINN no choice but to either endure Defendant TINSLEY's sexual advances as a condition of his employment – or resign. Plaintiff WINN's resignation is viewed by Washington State law as the Tort of Constructive Discharge if a "reasonable person" in Plaintiff WINN's shoes would feel the working conditions created by his employer (Defendant TINSLEY) left Plaintiff WINN with no choice but to resign.

## II. PARTIES

10. Plaintiff WINN is an individual, a resident of the State of Washington, and a former employee of Defendant TINSLEY.

11. Defendant TINSLEY is an individual, a resident of the State of Virginia, and former employer of Plaintiff WINN. At relevant times herein, Defendant TINSLEY employed eight (8) or more employees (including Plaintiff WINN) and thus was an "employer" as defined by RCW 49.60.040(11).

12. The WLAD applies to employers with eight or more employees and thus applies to Plaintiff WINN's former employer, Defendant TINSLEY. *See* RCW 49.60.040(11). "Employer" is defined to include "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons." RCW § 49.60.040(11). *See* WASH. ADMIN. CODE ("WAC") § 162-16-220 (regarding counting the number of persons employed) and WAC 162-16-230(3) (regarding employee's status based on "economic realities test," which includes analysis of 11

PLAINTIFF'S COMPLAINT FOR DAMAGES – 5

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 5 of 91

factors, keeping in mind that "*no one factor is determinative,*" *Larner v. Torgerson Corp.*, 93 Wn.2d 801, 613 P.2d 780 (1980) (emphasis added)). The number of persons employed is determined by the names on the employer's payroll for the period covering the pertinent dates, regardless of whether the individual has labelled themselves as an "independent contractor" or has 1099 status for tax purposes. *See* WAC 162-16-220; WAC 162-16-230(k) ("The tax laws do not have the same purposes as the law against discrimination, so employee status for tax purposes is helpful but not controlling.") (emphasis added); *Anaya v. Graham*, 89 Wn. App. 588, 591-93, 950 P.2d 16 (Div. I, 1998); *see also: Cole v. Harveyland*, LLC, 163 Wn. App. 199, 203, 258 P.3d 70 (Div. I, 2011) (discussing *Anaya* with approval). It is immaterial whether the employer is comprised of just one owner/individual, like here with Defendant TINSLEY. *See Patten v. Ackerman*, 68 Wn. App. 831, 834-35, 846 P.2d 567 (Div. III, 1993). Corporate officers generally count as well. *See Id.* at 835-36.

13. Defendant TINSLEY was Plaintiff WINN's employer. An employment contract is not required under WA law to establish an employer/employee relationship, however the existence of such a contract is certainly evidence of such a relationship. The actions of the parties establish an employer/employee relationship, which clearly occurred here, based on several factors, including but not limited to emails, phone calls, in-person conversations, and texts exchanged between Defendant TINSLEY, his supervisor-level employees, and his employee, Plaintiff WINN. Defendant TINSLEY sent at least three separate written employment contracts to Plaintiff WINN (Aug. 2015, Sept. 2015, Feb. 2016), using words including "[t]his ... constitutes the formal agreement ('Contract') between Boyd Tinsley and [James Frost-Winn], whereby you are being hired for compensation to play/perform." *See* Session Musician/Vocalist Release Contract drafted

PLAINTIFF'S COMPLAINT FOR DAMAGES – 6

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

and sent by Defendant TINSLEY to Plaintiff WINN on Sept. 2, 2015. Plaintiff WINN has volumes of receipts showing compensation payment from Defendant TINSLEY to Plaintiff WINN, spanning several years and reflecting the agreed terms of Plaintiff WINN's employment with Defendant TINSLEY.

## III. STATUTE OF LIMITATIONS

14. Plaintiff WINN re-alleges and incorporates by reference paragraphs 1-13 of this Complaint.

15. Plaintiff WINN brings his claims herein plead against Defendant TINSLEY within the applicable WA State statute of limitations. WA State applies a three-year statute of limitations to actions brought under RCW 49.60. *See* RCW 4.16.080(2)[1]. In 2004, the WA State Supreme Court in *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (2004) rejected WA State's existing precedent under the "continuing violation doctrine"[2] when it adopted the reasoning of the court in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) for determining liability under the WLAD for hostile work environment claims. The court in *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004) held that the *Morgan* analysis, "more fully advances the legislature's intent to end discrimination." *Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004). The holding, in effect, "extends" beyond the three-year time limitation for purposes of the WLAD when discriminatory

---

[1] The WLAD does not contain its own statute of limitations period. Discrimination claims must be brought within three years under the general three-year statute of limitations for personal injury actions. RCW 4.16.080(2); *see Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004); *Washington v. Boeing Co.*, 105 Wn.App. 1, 19 P.3d 1041, (Div. 1 2000); *Goodman v. Boeing Co.*, 75 Wash.App. 60, 77, 877 P.2d 703 (1994), aff'd, 127 Wash.2d 401, 899 P.2d 1265 (1995).

[2] *See, e.g., Washington v. Boeing Co.*, 105 Wash.App. 1, 8, 19 P.3d 1041 (2000).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 7

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 7 of 91

conduct is ongoing – allowing a plaintiff, like Plaintiff WINN, to allege otherwise time-barred discriminatory acts and recover damages against Defendant TINSLEY based on those acts.

16.     In adopting the reasoning of *Morgan*, the WA State court's holding in *Antonius* did not view the issue of acts occurring before the limitations period in a hostile work environment case as a matter of an equitable exception to the statute of limitations. Instead, the holding in *Morgan* (and controlling WA State legal precedent of the court's holding in *Antonius*) focused on the nature of the claim itself as "*a series of acts that collectively constitute one unlawful employment practice*." *See Antonius*, 103 P.3d 729, *supra*. "As a unitary whole, the claim is not untimely if one of the acts occurs during the limitations period because the claim is brought after the practice, as a whole, occurred and within the limitations period." *Id.* "*In its early stages [the acts] may not be diagnosable as sex discrimination ... or may not cause sufficient distress* ... or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures." *Antonius*, 103 P.3d 729 (emphasis added)[3] The Court in *Antonius* distinguished those cases involving discrete retaliatory or discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, from cases involving claims of a hostile work environment. *Id.* However, the Court in *Antonius* concluded that "hostile work environment claims 'are different in kind from discrete acts' and '[t]heir very nature involves repeated conduct.'" *Id.* (*citing Morgan*, 536 U.S. at 115, 122 S.Ct. 2061). The Court said that "the 'unlawful employment practice' therefore cannot be said to occur on any particular day.'" *Id.* "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of

---

[3] *Citing Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1166 (7th Cir. 1996), *overruled in part by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n. 11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 8

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 8 of 91

harassment may not be actionable on its own.... Such claims are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061. The Court explained that *"[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Antonius*, 103 P.3d 729 (emphasis added)[4]

17.  Here, Plaintiff WINN was constructively discharged by Defendant TINSLEY in August 2016, with the majority of the harassing acts by Defendant TINSLEY against Plaintiff WINN occurring on or after April 2015 (within the *general* three-year statute of limitations – from Plaintiff WINN's April 2015 constructive discharge to today's May 2018 filing of Plaintiff WINN's lawsuit, as herein plead). However, some of Defendant TINSLEY's unwelcome sexual acts towards Plaintiff WINN began *prior* to April 2015, when Defendant TINSLEY discovered/recruited, financed, groomed, and lured Plaintiff WINN from his life as a homeless street-performer to become a member of Defendant TINSLEY's "boy band"/Crystal Garden, to Plaintiff WINN's constructive discharge in August 2016.

18.  The employer/employee dominant/servant relationship between Defendant TINSLEY and Plaintiff WINN was created during the recruitment process when Defendant TINSLEY discovered, recruited, groomed, and financed Plaintiff WINN to be a member of his "boy band" that would become Crystal Garden. Under WA State controlling precedent, the cumulative effect of each of Defendant TINSLEY's unwelcome sexual acts against Plaintiff WINN – no matter how slight or, conversely, how egregious – created one continuous, connected hostile work environment for Plaintiff WINN.

---

[4] *Citing Morgan*, 536 U.S. at 117, 122 S.Ct. 2061 (*quoting* 42 U.S.C. § 2000e-5(e)(1)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 9

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 9 of 91

19.     In establishing his prima facie case for each of the four claims herein alleged, Plaintiff WINN does not rely heavily on TINSLEYS's unwelcome sex-based acts towards him that occurred prior to April 2015 (outside the general statute of limitations). However, WA law supports that all acts of Defendant TINSLEY's unwelcome, sex-based behavior towards Plaintiff WINN (including acts occurring prior to April 2015 and acts occurring up to Plaintiff WINN's constructive discharge in August 2016) are included in "a series of separate acts that collectively constitute one 'unlawful employment practice'" creating a hostile work environment for Defendant TINSLEY's employee, Plaintiff WINN.

20.     These collective acts demonstrate how Defendant TINSLEY, like any seasoned sexual predator, spent years financing, grooming, luring, and otherwise **building the trust** of his victim, Plaintiff WINN. Enticing Plaintiff WINN with a world that a homeless street musician like Plaintiff WINN had only dreamed of prior to Defendant TINSLEY targeting him, financing his musical ascent, then predicating Plaintiff WINN's continued employment on repeated compliance with Defendant TINSLEY's unwelcome, sex-based demands.

21.     Defendant TINSLEY's creepy, sex-based behavior towards Plaintiff WINN began *prior* to April 2015 and continued through Plaintiff WINN's constructive discharge in August 2016. All of these acts are "part of *one unlawful employment practice*" by Defendant TINSLEY against Plaintiff WINN under controlling WA State law set in *Antonius*.

## IV.    JURISDICTION

22.     Plaintiff re-alleges and incorporates by reference paragraphs 1-21 of this Complaint.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 10

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 10 of 91

23.     Jurisdiction and venue are proper in this Court because the band "Crystal Garden" was based in Seattle, WA (Fremont), located in King County. Defendant TINSLEY created, managed, and paid the wages, rent, and all living expenses for the band members of "Crystal Garden" (*i.e.,* his employees, including band member, Plaintiff WINN). Defendant TINSLEY leased and paid for in full the Fremont/Seattle, WA, apartment that he secured for the Crystal Garden band members/employees to live in together while working on their music. Defendant TINSLEY paid monthly wages to and living expenses for his employees (the Crystal Garden band members, including Plaintiff WINN) – all of which occurred in Seattle, WA (located in King County).

24.     This Court has jurisdiction over the subject matter of this suit and venue is proper herein. RCW 49.60.030(2) authorizes "a civil action in a court of competent jurisdiction" to remedy a violation of RCW 46.60, including violations of the prohibition of sex discrimination found in RCW 49.60.010; RCW 49.60.030(1) and RCW 49.60.180. *See Griffin v. Eller*, 130 Wn.2d 58, 922 P.2d 788 (1996)

## Personal Jurisdiction

25.     This Court has personal jurisdiction over Defendant TINSLEY. Jurisdiction is proper in WA State for Plaintiff WINN's claims against Defendant TINSLEY for are pursuant to personal jurisdiction under WA State's long-arm statute. WA State's long-arm statute, RCW 4.28, authorizes the court to exercise jurisdiction over a non-resident defendant to the extent permitted by the due process clause of the United States Constitution.[5]  WA State has personal jurisdiction

---

[5] *See SeaHAVN, Ltd. v. Glitnir Bank*, 154 Wn.App. 550, 226 P.3d 141, (Div. 1 2010); *MBM Fisheries, Inc. v. Bollinger Machine Shop and Shipyard, Inc.*, 60 Wash.App. 414, 418, 804 P.2d 627 (1991).

PLAINTIFF'S COMPLAINT FOR DAMAGES - 11

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 11 of 91

over Defendant TINSLEY based on the "transaction of business within the state" under RCW 4.28.185(1) and based on "the ownership, use, or possession of any property whether real or personal situated in this state" under RCW 4.28.185(c).

RCW 4.28.185 provides in pertinent part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

 a) The transaction of any business within this state;

 ...

 c) The ownership, use, or possession of any property whether real or personal situated in this state;

 ...

RCW 4.28.185(1)(a) and (c).

26. To exercise specific personal jurisdiction over a foreign defendant under RCW 4.28.185, the following three-part "minimum contacts" test must be met:

 1. The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

 2. The cause of action must arise from, or be connected with, such act or transaction; and

 3. The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 12

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel: (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 12 of 91

*Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 767, 783 P.2d 78 (1989); *see also SeaHAVN, Ltd.*, 226 P.3d 141, 149. Additionally, pursuant to RCW 4.28.185(3), "only causes of action arising from acts enumerated [under RCW 4.28.185] may be asserted against a defendant in an action in which jurisdiction over him or her is based upon [RCW 4.28.185]." *See* RCW 4.28.185(3).

27. Here, WA State establishes personal jurisdiction over Defendant TINSLEY for his unlawful acts against his former employee, Plaintiff WINN. Defendant TINSLEY meets the "minimum contacts" test for specific personal jurisdiction over a Defendant in WA State. *See* RCW 4.28.185. WA State establishes specific personal jurisdiction over Defendant TINSLEY under RCW 4.28.185(1)(a) and (c) based on Defendant TINSLEY's signed lease for the Seattle, WA (Fremont neighborhood) AirBNB apartment leased for his employees (Crystal Garden band members, including Plaintiff WINN) and paid for in-full by Defendant TINSLEY – this signed lease for the use of real property in Seattle, WA, constitutes Defendant TINSLEY's "ownership, use, or possession of any property whether real or personal situated [within WA State]" under RCW 4.28.185(1)(c).

28. The WA court examined the "minimum contacts" 3-part test in *John Does 1-9 v. CompCare, Inc.*, 52 Wash.App. 688, 763 P.2d 1237 (1988), where victims of sexual abuse sued the Diocese of Lafayette, Louisiana and three court officials. The lawsuit alleged the Diocese negligently placed and supervised its priest in Spokane, Washington. On appeal, *the court held that Washington acquired jurisdiction over the Diocese under the long-arm statute.* The court cited a number of purposeful contacts including:

- Payment of the expenses to relocate the priest to Spokane;

PLAINTIFF'S COMPLAINT FOR DAMAGES – 13

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W.A. 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 13 of 91

- Continuing to pay the priest a subsidy;

- Payment of psychiatric treatment and hospitalization; and

- Telephone conversations between the Louisiana Diocese with the priest and the Spokane Diocese.

*Does 1-9*, 52 Wash.App. at 697-98, 763 P.2d 1237. In reaching the conclusion that the Diocese *engaged in purposeful conduct in WA State*, the court relied on the direct benefit to the Diocese of the discipline and treatment of the priest in Washington. *Does 1-9*, 52 Wash.App. at 698, 763 P.2d 1237.

29. Here, like the employer in *Does 1-9*, Defendant TINSLEY had "purposeful contacts" with WA State, including:

- Defendant TINSLEY's payment of expenses to relocate Plaintiff WINN and his band-mates to Seattle, WA, Defendant TINSLEY paying Plaintiff WINN and his band-mates a monthly salary while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY);

- Defendant TINSLEY paying all living expenses and food for Plaintiff WINN and his band-mates while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY);

- Defendant TINSLEY paying for all transportation for Plaintiff WINN and his band-mates (via Lyft and Uber) while they lived and worked in Seattle, WA, on the music for Crystal Garden (band created and managed by Defendant TINSLEY).

30. Additionally, just as the WA State court held in *Does 1-9* that there was a "direct benefit" to the out-of-state employer (Diocese) of the discipline and treatment of its priest employee in WA State, here there exists a "direct benefit" to employer (Defendant TINSLEY) of the treatment of his employee, Plaintiff WINN, in WA State. WA State establishes "purposeful contacts" over Plaintiff WINN's former employer, Defendant TINSLEY.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 14

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
ww .hendersonlaw-group.com

31.     Lastly, Defendant TINSLEY meets the requirements of RCW 4.28.185(3), via Defendant TINSLEY's signed Seattle, WA, apartment lease – which stemmed from Defendant TINSLEY's employer/employee relationship with Plaintiff WINN and the other Crystal Garden band members who lived and worked in the Seattle, WA, apartment (leased by Defendant TINSLEY). Defendant TINSLEY leased the Seattle, WA. apartment for the sole purpose of his employees (incl. Plaintiff WINN) using the apartment to live and work in accordance with their employee/employer relationship with Defendant TINSLEY. The causes of action that Plaintiff WINN herein asserts against Defendant TINSLEY arise from Defendant TINSLEY's employer/employee relationship with Plaintiff WINN and, as such, meets the requirements of RCW 4.28.185(3).

## V.     FACTUAL ALLEGATIONS

32.     Plaintiff re-alleges and incorporates by reference paragraphs 1-31 of this Complaint.

33.     Defendant TINSLEY (born May 16, 1964) is a U.S. citizen, composer, violinist, and mandolinist who has performed as a core member of the Dave Matthews Band ("DMB") for over 25 years. Within the DMB, Defendant TINSLEY has collaborated in writing songs, harmonizing, and singing backing vocals – DMB has released several successful albums and toured worldwide to sold-out crowds for over 25 years. Outside of DMB, Defendant TINSLEY has pursued solo projects that he has created and managed, including creating and managing the band of which Plaintiff WINN was a member, "Crystal Garden." Defendant TINSLEY's net worth is estimated at over $70 million.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 15

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 15 of 91

34.     Plaintiff WINN is a Caucasian male born in 1989 in Honolulu, Hawaii. Plaintiff WINN grew-up in Las Vegas, NV, with his parents and a brother who left home when Plaintiff WINN was eight (8) years old. Plaintiff WINN's family was poor. They received food stamps and government assistance. His father was on disability and his mother was on SSI. They also had constant renters occupying rooms in the home throughout his upbringing, until Plaintiff WINN himself started paying rent at the age of 16.

35.     Plaintiff WINN attended high school at the Las Vegas Academy – he applied and was accepted to this prestigious arts school in 2004. After his first year, Plaintiff WINN's grades were not sufficient, and he had to leave and attend Desert Pines High School. In his junior year, Plaintiff WINN re-applied and was again accepted into the Las Vegas Academy. This is a rare occurrence and a testament to Plaintiff WINN's talent as a musician. At the Academy, Mr. Tom Snelson, the para-professional trumpet instructor and former member of the Glenn Miller Band (among numerous other professional gigs), told Plaintiff WINN that he had raw talent.

36.     Plaintiff WINN played in the All County Band for Clark County in 2003. Plaintiff WINN moved to San Francisco, CA, in 2007. He went for the 40th anniversary of the Summer of Love. Plaintiff WINN ended-up staying in San Francisco on a whim to start creating music with other musicians he met. Plaintiff WINN played street music with Benny Langfur, a notable street musician in San Francisco who asked Plaintiff WINN to travel with him. They won a battle of the bands together to play at the Haight-Ashbury street fair in 2011. What started as a three-day vacation to San Francisco, ended up being Plaintiff WINN's new home until 2015.

37.     Plaintiff WINN has played on a number of albums with different bands and individual musicians. There was a large collection of street musicians that worked together –

PLAINTIFF'S COMPLAINT FOR DAMAGES – 16

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 16 of 91

Plaintiff WINN's band "Morph Dwarf" (2010-12) gave rise to the current San Francisco successful band, "Be Calm Hancho." Plaintiff WINN also played with the band, "Love Dimension" (2016), a professional, local, well-established San Francisco band that opened for the bands "Big Brother" and "The Holding Company." Plaintiff WINN has also played with "Down Dirty Shake" (2016), "The Jugtown Pirates" (2008-9), Josh Brough (2008) of the band "Poor Man's Whiskey," Salvatore Geloso (2009-14) (2nd place in Rolling Stone's street musician ranking, representing New Orleans) and numerous others.

38. The Haight Ashbury show had thousands in attendance, and his show with Chris Jeffries (Plaintiff WINN is on his album, "Homeless Romantic," along with Salvatore Gesso (2014)) was at the legendary San Francisco club, "Bottom of the Hill." Plaintiff WINN was hand-selected by the president of the Haight Ashbury street fair in San Francisco to book music and run the Masonic music stage. The Haight Ashbury street fair was originally organized and created with the assistance of Harvey Milk, and has been continuing for over 40 years. It was created to express the return of a vibrant community to the area. Plaintiff WINN was also on the Board of Directors for the fair for the year 2015. Plaintiff WINN would have stayed on the Board and continued to run that stage and grown his opportunities at one of the largest and most well-known fair events in the country, but he had to stop his work with The Haight Ashbury street/music fair to join "Crystal Garden."

39. One of Crystal Garden's earliest shows, and probably the most well attended show of Crystal Garden to date, was at the Haight Ashbury fair in June 2016 on the stage that Plaintiff WINN booked for the band. Plaintiff WINN personally forfeited the $250.00 that the street fair still owed him in exchange for a headlining spot at the fair.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 17

Exhibit A - Page 17 of 91

40. Defendant TINSLEY used the band name "Crystal Garden" based on Plaintiff WINN having found some crystals on Defendant TINSLEY's property. Defendant TINSLEY has told Plaintiff WINN several times that he started the band for Plaintiff WINN specifically, including when Plaintiff WINN left the band for the second time in August 2016 (the first time being in Nov. 2015 when Defendant TINSLEY ejaculated next to Plaintiff WINN and touched Plaintiff WINN's buttocks while Plaintiff WINN was sleeping). Defendant TINSLEY told Plaintiff WINN repeatedly that Plaintiff WINN "could not leave the band," as it was "James' band;" that Defendant TINSLEY had created the band around Plaintiff WINN. The first t-shirt Defendant TINSLEY designed/made for Crystal Garden is an image of Plaintiff WINN; Defendant TINSLEY wore this shirt on multiple occasions while performing with the Dave Matthews Band.

41. Below is a personal statement written by Plaintiff WINN about his inherent passion for playing the trumpet – a passion that has been deeply wounded by the extreme depression and humiliation suffered by Plaintiff WINN as a result of the harassment and retaliation he endured from his former employer, Defendant TINSLEY:

> "In certain ways, I feel like the trumpet chose me. I started playing the trumpet when I was 11 years old; I joined the school band and quickly became top trumpet player in my class – I never lost the top position once I obtained it. I successfully auditioned for All State Band (5th chair in the state of Nevada) and received entry twice into the Las Vegas Academy of the Arts, a prestigious arts school. The trumpet is how I met most of my closest friends in San Francisco. I can honestly say that my love for playing the trumpet changed the course of my life numerous times. I have recorded on many positively-received albums. I have performed with many well-known local

PLAINTIFF'S COMPLAINT FOR DAMAGES – 18

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 18 of 91

artists in the San Francisco, CA, area. The trumpet is linked to my spirit – it is something I genuinely feel I was put on Earth to do."

Plaintiff WINN (in his own words); December 2017.

## 2007-2009

42.     Plaintiff WINN met Defendant TINSLEY for the first time in September 2007. Plaintiff WINN was 18-years old, living on the streets of San Francisco, trying to make it as a musician. They met at the Peace Café in San Francisco; Defendant TINSLEY was with his friend, Ryan Orr. Defendant TINSLEY was interested in what Plaintiff WINN was saying to his friend, Natalie, who worked at the Café. When Natalie went off to help a customer, Defendant TINSLEY and Plaintiff WINN began talking.

43.     Plaintiff WINN asked Defendant TINSLEY if he was a musician; he said he was, and that he played the violin. Defendant TINSLEY shared that he had been playing for about 30 years. Plaintiff WINN asked Defendant TINSLEY if he wanted to play at an open mic night with his friend, Ms. Kerry Gulbrabson; Defendant TINSLEY gladly accepted and gave Plaintiff WINN his phone number.

44.     The next day, Plaintiff WINN was doing a street performance with Ms. Gulbrabson. Defendant TINSLEY came to watch them play and offered to get them some food. Defendant TINSLEY came back with Indian food for Plaintiff WINN and Kerry, as well as two very nice jackets, saying to Plaintiff WINN and Kerry that it had started to get cold out and that he thought they would like them.

45.     A few days later. Defendant TINSLEY texted Plaintiff WINN saying that he was very glad to have met him and that he had another gift for Plaintiff WINN, to be delivered by

PLAINTIFF'S COMPLAINT FOR DAMAGES – 19

Exhibit A - Page 19 of 91

Defendant TINSLEY's friend/employee, Mr. Ryan Orr. A few days later, Mr. Orr brought Plaintiff WINN a DMB CD, autographed by Defendant TINSLEY, that read, "James, you have a beautiful soul."

46. In August 2009, Plaintiff WINN received backstage passes from Defendant TINSLEY for "Outside Lands," a San Francisco music festival at which Defendant TINSLEY was performing. After the show, Defendant TINSLEY invited Plaintiff WINN back to his hotel room. Plaintiff WINN wanted to bring his friends with him, but Defendant TINSLEY said he did not feel like "hosting a party." As such, Plaintiff WINN declined the invite; he felt uncomfortable accepting Defendant TINSLEY's invitation without bringing along his friends who had accompanied him to the festival.

47. Soon after, Plaintiff WINN received a text from Defendant TINSLEY[6], wherein Defendant TINSLEY referred to Plaintiff WINN as "sweet, tender, and innocent." Plaintiff WINN responded, making it clear that he just wanted to be friends and was not interested in anything else. Defendant TINSLEY replied, writing that he "speaks poetically" and that Plaintiff WINN had "nothing to worry about." Defendant TINSLEY concluded the message by saying, "sometimes people do good things without wanting anything in return." This response made Plaintiff WINN feel guilty about confronting Defendant TINSLEY.

## 2009-2014

48. In late summer 2011, Defendant TINSLEY was on tour and was staying in San Francisco. Defendant TINSLEY texted Plaintiff WINN and asked if Plaintiff WINN would come

---

[6] Sent by Defendant TINSLEY to Plaintiff WINN's girlfriend's phone (where Defendant TINSLEY knew Plaintiff WINN could be reached), as Plaintiff WINN did not have his cell phone with him that evening.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 20

Henderson Law Group, PLLC
1800 Cooper Point RD SW., Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 20 of 91

and "hang out" at his hotel. Plaintiff WINN had brought Defendant TINSLEY a t-shirt from his band, which Defendant TINSLEY immediately put on. Plaintiff WINN played some of his recorded music for Defendant TINSLEY and the two hung-out for a few hours. During this time, Defendant TINSLEY showed Plaintiff WINN a portion of a film he was working on titled "Gypsy Fire Dance" (this was immediately following Defendant TINSLEY and Plaintiff WINN listening to a song of Plaintiff WINN's called "Dance of the Fire Gypsy.") Defendant TINSLEY told Plaintiff WINN to order whatever he wanted from room service and then paid for Plaintiff WINN's ride home.

49. In September 2011, Defendant TINSLEY invited Plaintiff WINN to the DMB Caravan at the Gorge Amphitheater (located in WA State). Defendant TINSLEY gave Plaintiff WINN tickets to the event and access to the "VIP Campground." Plaintiff WINN went to see the premiere of Defendant TINSLEY's movie screening on Saturday. That night, Plaintiff WINN hung-out on Defendant TINSLEY's personal tour bus at the Gorge VIP Campground (with Defendant TINSLEY, Defendant TINSLEY's employee, Mr. Ryan Orr, Ryan Orr's girlfriend, and the bus driver). They stayed-up talking and smoked marijuana together – Defendant TINSLEY returned to his yurt.

50. Plaintiff WINN had not had cell phone reception while they were at Gorge that weekend. After Plaintiff WINN left the Gorge on Sunday, Plaintiff WINN regained cell reception. A text from late the night before popped-up on Plaintiff WINN's cell phone from Defendant TINSLEY. Defendant TINSLEY had texted Plaintiff WINN to come hang-out, "alone" together in his yurt.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 21

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlaw-group.com

Exhibit A - Page 21 of 91

51.     In mid-2012, Defendant TINSLEY asked Plaintiff WINN if he would like to come visit him. Plaintiff WINN agreed, and Defendant TINSLEY proposed Toronto, Canada. Plaintiff WINN accepted, but did not have a passport. Defendant TINSLEY assured Plaintiff WINN that he would have someone help him and they would expedite the process; the get-together was planned for just a couple of weeks away. Defendant TINSLEY paid for Plaintiff WINN's trip, his passport, and a very nice room in a 5-star hotel.

52.     Plaintiff WINN was in Toronto, Canada for just a few days and interacted only briefly with Defendant TINSLEY. The majority of the interaction was on the tour bus, where they rode to the DMB show together. Defendant TINSLEY gave Plaintiff WINN a backstage pass to the show and cab money for his trip. Plaintiff WINN did not have cell service in Canada. Upon his return to the States, Plaintiff WINN had a late-night text from the previous evening pop-up from Defendant TINSLEY, asking him to come "hang out" in his room.

53.     During 2014, Defendant TINSLEY again invited Plaintiff WINN to join him at his hotel in San Francisco while he was in town, on tour with DMB. Defendant TINSLEY paid for Plaintiff WINN's transportation (to and from the hotel) and for Plaintiff WINN's food and expenses while on the trip to visit Defendant TINSLEY. Defendant TINSLEY told Plaintiff WINN that he was interested in making a documentary about a "boy band" that he created "from nothing" through them becoming "famous" – Defendant TINSLEY asked Plaintiff WINN if he was interested. Plaintiff WINN said it sounded like a great project and they agreed to begin working out the details.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 22

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W.\ 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 22 of 91

**2015**

54.     In spring of 2015, Plaintiff WINN's mother passed away. In July 2015, Plaintiff WINN contacted Defendant TINSLEY and shared the news that his mother had recently passed. Defendant TINSLEY again discussed with Plaintiff WINN his idea of making the documentary about the "boy band." Defendant TINSLEY told Plaintiff WINN that he was going to start searching more seriously for the other musicians to do this project and that he would keep Plaintiff WINN informed.

55.     In late August 2015, Defendant TINSLEY called Plaintiff WINN and said he had recruited the other band members to join Plaintiff WINN and start the band they had discussed: Matthew Frewen, Mycle Wastman, Joel Jacobs, and Charlie Contoso. He told Plaintiff WINN it was time for them to start work on music and paid for Plaintiff WINN to fly to his home/recording studio compound located in Charlottesville, Virginia, to record with the band members. Defendant TINSLEY named the band, "Crystal Garden," and the employment relationship between owner/manager Defendant TINSLEY and "Crystal Garden" band member, Plaintiff WINN, began. Defendant TINSLEY hired two (2) professional music producers to work with him and the band members of "Crystal Garden." Everything for the trip was financially paid for by Defendant TINSLEY, including meals, accommodations, marijuana, and alcohol. The recording session lasted approximately five (5) days, after which Defendant TINSLEY flew Plaintiff WINN back to San Francisco.

56.     In September 2015, Plaintiff WINN, along with the other Crystal Garden band members, were contacted by Defendant TINSLEY and asked to come out to The Gorge, in Washington State. They were all put up in a 5-star hotel in downtown Seattle, WA, and taken to a

PLAINTIFF'S COMPLAINT FOR DAMAGES – 23

Henderson Law Group, PLLC
1800 Cooper Point RD SW , Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 23 of 91

Seahawks game, where they sat in a box suite, and parked in the Seahawks private "players garage." Defendant TINSLEY hired a professional videographer/photographer (Mr. Ivan Agerton) and sound person (Ms. Carli Plute) to document the "Crystal Garden" band members. Defendant TINSLEY had also hired a writer, Craig Heimbuch, to begin writing a book about the forming of the "Crystal Garden" band.

57. One morning in November 2015, Plaintiff WINN was woken-up at 5 AM by a phone call from Defendant TINSLEY. Defendant TINSLEY asked Plaintiff WINN if he would come to Europe to join him and Charlie Csontos (member of the Crystal Garden band) so they could do some more filming for the "boy band" documentary. Plaintiff WINN agreed to Defendant TINSLEY's requests and Defendant TINSLEY paid for Plaintiff WINN to fly-out to London that night. When Plaintiff WINN arrived, he was detained in customs because he did not have much money and did not know where he was going to stay.

58. Plaintiff WINN was finally released from customs after Defendant TINSLEY got in touch with customs and cleared-up everything for Plaintiff WINN. Defendant TINSLEY, Plaintiff WINN, and Charlie Csontos (member of the Crystal Garden band with Plaintiff WINN) walked around London exploring. Defendant TINSLEY bought Plaintiff WINN and Charlie Csontos crystals and vaporizers.

59. Later that day, Plaintiff WINN rode with Defendant TINSLEY and Charlie Csontos on a private tour bus to Manchester, England (for the DMB show that was that night). They spent the next day in Glasgow, Scotland; Plaintiff WINN and Charlie Csontos watched the DMB show that night from the side stage area.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 24

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 24 of 91

60.     The next day they went to Dublin, Ireland, and were put up by Defendant TINSLEY in a luxury hotel. Defendant TINSLEY gave Plaintiff WINN and Charlie Csontos spending money and paid for all their accommodations and food. **While in Dublin, Ireland, Defendant TINSLEY asked Plaintiff WINN for his socks. Plaintiff WINN grabbed a clean pair and handed them to Defendant TINSLEY – Defendant TINSLEY said he wanted the ones Plaintiff WINN was wearing (witnessed by Charlie Csontos). Plaintiff WINN reluctantly obliged, thinking it was weird that Defendant TINSLEY wanted his dirty socks. Defendant TINSLEY immediately put on Plaintiff WINN's dirty socks and got ready to go play.** After the show, Defendant TINSLEY and Plaintiff WINN flew on a private jet from Dublin to London with the bass player, trumpet player, and drummer from DMB. They then all flew to New York City the following day.

61.     While Plaintiff WINN and Defendant TINSLEY were in New York City, Plaintiff WINN expressed interest in watching the Giants-Patriots game with his friends who were also in town visiting. Defendant TINSLEY asked if Plaintiff WINN wanted to take his friends to the actual game, which he did. **Defendant TINSLEY bought five (5) tickets to the game for Plaintiff WINN and his friends, saying to Plaintiff WINN "man you better suck my dick or something."** Defendant TINSLEY had his paid driver take them to the game and wait to drive them back.

62.     The next day, Defendant TINSLEY said to Plaintiff WINN and the other band members that, "due to the cost of things he had paid for on the trip," he wanted them to take an Uber rather than fly to his home/recording studio compound in Charlottesville, Virginia. Plaintiff WINN and the other band members agreed and took an Uber from New York City to Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES – 25

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 25 of 91

TINSLEY's home/recording studio compound in Charlottesville, Virginia, where they met up with Defendant TINSLEY.

## November 2015

63. For the next few days (in November 2015), Plaintiff WINN, the other "Crystal Garden" band members, Defendant TINSLEY and Defendant TINSLEY's music sound engineers all stayed together and recorded at Defendant TINSLEY's home/recording studio compound in Charlottesville, Virginia. Defendant TINSLEY was also able to get Stanley Jordan to record with them for part of the time.

64. At one point, Defendant TINSLEY was telling the drummer what to play and an argument ensued between the two – in anger, Defendant TINSLEY smashed a vintage guitar in the production room. He then yelled at the band members, asking if they understood how big of an opportunity this was and questioned their commitment to the project. After several minutes, Charlie Csontos and Plaintiff WINN were finally able to calm Defendant TINSLEY down. Defendant TINSLEY then said sternly to the band members that this project would propel them much further "if they just did what he told them to do." Plaintiff WINN had not seen this angry, controlling side of Defendant TINSLEY until that that moment – it was a completely different personality than the Defendant TINSLEY he had come to know.

65. That same night, Plaintiff WINN, the other "Crystal Garden" band members, Defendant TINSLEY, and Defendant TINSLEY's music sound engineers all stayed up until about 7 AM together working on music – some were together in the main house and some were working together out in the recording studio. Plaintiff WINN and Defendant TINSLEY were working together on music in the living room located on the first floor of the main house. Plaintiff WINN

PLAINTIFF'S COMPLAINT FOR DAMAGES – 26

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 26 of 91

was getting tired and began falling asleep on the couch. As Plaintiff WINN would fall asleep, Defendant TINSLEY would begin touching Plaintiff WINN's leg, putting his feet on his buttocks and rubbing his back. This woke-up Plaintiff WINN in disgust and made Plaintiff WINN feel incredibly uncomfortable – Plaintiff WINN told Defendant TINSLEY to stop. Plaintiff WINN returned to falling back asleep. Defendant TINSLEY again waited until Plaintiff WINN was asleep before he began touching Plaintiff WINN's leg, putting his feet on his buttocks and rubbing Plaintiff WINN's back. Plaintiff WINN again woke-up in disgust and again told Defendant TINSLEY to stop – this time Plaintiff WINN pushed Defendant TINSLEY away, got-up from the couch and moved to a couch upstairs where he fell asleep.

66.     After being asleep for a period of time, Plaintiff WINN woke-up horrified to feel and see Defendant TINSLEY ejaculating right next to him while rubbing his penis with one hand, Defendant TINSLEY's other hand was on Plaintiff WINN's buttocks – Plaintiff WINN had been passed-out asleep. Plaintiff WINN was disgusted and yelled "what the fuck?!" Plaintiff WINN jumped off the couch and began walking quickly towards the other building on the property (where the recording studio was located). Defendant TINSLEY ran towards Plaintiff WINN calling out, "James wait!" Seeing Defendant TINSLEY coming after him, Plaintiff WINN quickly ran out of the studio back towards the main house; he heard Defendant TINSLEY follow him into the main house. Plaintiff WINN hid in the bathroom out of fear for what Defendant TINSLEY would do next to him physically. After Plaintiff WINN heard Defendant TINSLEY go upstairs in the main house, Plaintiff WINN ran back out to the studio building to hide. Plaintiff WINN sat hiding in the studio for several hours, staring-off into space – he felt like he had been punched in the stomach. He was in complete shock by what Defendant TINSLEY had just done to him. Plaintiff

PLAINTIFF'S COMPLAINT FOR DAMAGES – 27

Exhibit A - Page 27 of 91

WINN had built what he thought was a respectful, trusted relationship with his manager, Defendant TINSLEY. Plaintiff WINN's sexual orientation is straight, but regardless of that, he has never been remotely interested in Defendant TINSLEY sexually.[7] Plaintiff WINN felt humiliated and scared that Defendant TINSLEY continued his sexual advances towards Plaintiff WINN after Plaintiff WINN had told him to stop. Plaintiff WINN didn't know what to do next – he sat hiding in the recording studio shaking from shock.

67.    After hiding in the recording studio for several hours, Plaintiff WINN decided he needed to tell someone what Defendant TINSLEY had done to him and ask for help. Plaintiff WINN got up and walked to find their band's music engineer, Mr. Craig Conard, an old friend of Defendant TINSLEY's who was there onsite at Defendant TINSLEY's home/recording studio. Plaintiff WINN told Mr. Conard what had happened over the past several hours – Mr. Conard responded to Plaintiff WINN that he was disgusted by Defendant TINSLEY's behavior. Mr. Conard continued, saying to Plaintiff WINN that Plaintiff WINN may have to leave the "Crystal Garden" band if Defendant TINSLEY continued with the sexual behavior towards Plaintiff WINN and that Defendant TINSLEY would likely need to pay Plaintiff WINN money to keep him quiet about this. Plaintiff WINN just wanted to keep playing music with the band and wanted this nightmare to end. Charlie Csontos walked into the room and told Plaintiff WINN that Defendant TINSLEY wanted to speak with him immediately. Plaintiff WINN flat-out refused, saying he didn't want to be alone with Defendant TINSLEY. He then shared with Charlie Csontos what had

---

[7] Plaintiff WINN's sexual orientation, whether straight/gay/bi-sexual or other, is irrelevant to the validity of Plaintiff WINN's claims against his former employer, Defendant TINSLEY. Defendant TINSLEY's sex-based behavior towards Plaintiff WINN was unwelcome by Plaintiff WINN – period. This is what the court looks at in determining Defendant TINSLEY creating & perpetuating a hostile work environment against Plaintiff WINN.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 28

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 28 of 91

happened that morning with Defendant TINSLEY sexually touching him repeatedly and chasing him. Charlie Csontos was disgusted to hear about what Defendant TINSLEY had done to Plaintiff WINN. Mr. Csontos told Plaintiff WINN that something similar had happened to him in Europe before Plaintiff WINN had arrived and that he had almost quit the band as well – he comforted Plaintiff WINN and then tried to convince Plaintiff WINN to stay.

68.     Plaintiff WINN demanded a flight home. He did not want to be around Defendant TINSLEY at all. Defendant TINSLEY put Plaintiff WINN on a first-class flight home to San Francisco (the only time that Defendant TINSLEY ever flew Plaintiff WINN first-class). A week later, Defendant TINSLEY texted Plaintiff WINN, apologizing to Plaintiff WINN and texting that he was "messed up" – that he had "confused his pills." He told Plaintiff WINN that he didn't remember what he had done that night and wasn't aware of what he had done that night to Plaintiff WINN. Defendant TINSLEY told Plaintiff WINN that he would do whatever he needed to "regain James' trust," and it would never happen again. Plaintiff WINN decided to take Defendant TINSLEY's word for it and decided to remain in the "Crystal Garden" band. Defendant TINSLEY immediately bought Plaintiff WINN a brand-new iPhone and Mophie phone case – Defendant TINSLEY told Plaintiff WINN he would pay all fees and monthly bills for Plaintiff WINN's cell phone.

69.     In late December 2015, Defendant TINSLEY decided that Seattle, WA, would be a good location for the "Crystal Garden" band to be based. All four band members would live together and work on their music. Defendant TINSLEY's employee and friend, Ryan Orr, drove Plaintiff WINN and his belongings from San Francisco to a hotel in Seattle, WA, until the AirBNB apartment that Defendant TINSLEY had leased for the band members was available.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 29

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 29 of 91

**2016-2017**

70. In January 2016, the band members moved into the Seattle, WA (Fremont neighborhood) AirBNB apartment leased by Defendant TINSLEY and paid for in-full by Defendant TINSLEY. Defendant TINSLEY sent the band members payment of $750 per month (per person) – in addition to paying 100% of the band members' rent on the lease, grocery costs, and all housing-related expenses for the Seattle, WA, apartment in which the four band members lived and worked together on their music for "Crystal Garden." Defendant TINSLEY even had the band members use his credit card for Lyft/Uber transportation for their travel in and outside of Seattle, WA.

71. In February 2016, the band members went to San Francisco for a DMB show, and then they all drove to Las Vegas, Nevada, together that night. They stayed in a luxe suite at the Cosmopolitan Hotel, reserved and paid for by Defendant TINSLEY. At one point, Defendant TINSLEY handed Plaintiff WINN $200 to put in a slot machine; Plaintiff WINN immediately won a couple hundred dollars. Defendant TINSLEY told Plaintiff WINN to keep it. He also took Plaintiff WINN to a pipe shop and bought him a $300 vaporizer pen.

72. In March 2016, Defendant TINSLEY again asked Plaintiff WINN for Plaintiff WINN's dirty socks for his own pleasure, as well as other band members' dirty socks (incl. Charlie Csontos). Plaintiff WINN received a text message from Defendant TINSLEY in late March saying that he wanted to "sexually exploit him for the band's success." Defendant TINSLEY told Plaintiff WINN via text that Plaintiff WINN "is a sex symbol," and said to Plaintiff WINN that he (Defendant TINSLEY) "was masturbating at the thought of a sexy photo shoot of James." Defendant TINSLEY's text to Plaintiff WINN on March 28, 2016, at 10:09 PM, read, in part:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 30

Exhibit A - Page 30 of 91

"You're such boner material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear ... We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

73. Plaintiff WINN was embarrassed by Defendant TINSLEY's sexual text messages yet felt he had to respond to the text messages. Plaintiff WINN continued hoping that Defendant TINSLEY would stop sending him sexual messages; that he knew Plaintiff WINN was clearly not interested in reciprocating.

74. In April 2016, Defendant TINSLEY flew the band members to perform their first show in Charlottesville, Virginia, at the Tom Founders Festival. The show was a success, creating more fans and positive press for the band. It was also around this time that Plaintiff WINN was excited to have reconnected with his ex-girlfriend – they started dating again. Defendant TINSLEY's attitude toward Plaintiff WINN and the other band members immediately started to change; he did not like that they had girlfriends. The lead singer, Mycle Wastman, had a serious girlfriend in Seattle; Charlie Csontos was seriously seeing a girl – and now Plaintiff WINN was dating his ex-girlfriend again.

75. On July 4, 2016, Defendant TINSLEY arranged for the band to do a "periscope" (*i.e.*, a live, online broadcast.") The band did the periscope from their home practice studio in Seattle, WA, a "meet the band" type of broadcast. On July 11, 2016 the band played a show with legendary guitarist Stanley Jordan joining them for a performance in Rhode Island. In the weeks leading up to that show, Defendant TINSLEY was texting with Plaintiff WINN about how he wanted Plaintiff WINN to play. Defendant TINSLEY texted Plaintiff WINN, in part:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 31

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 31 of 91

> "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

76. Plaintiff WINN was embarrassed by Defendant TINSLEY's sexual text messages yet felt he had to respond to the text messages. Plaintiff WINN continued hoping that Defendant TINSLEY would stop sending him sexual messages; that he knew Plaintiff WINN was clearly not interested in reciprocating.

77. In June 2016, the band played the Haight Street Fair in San Francisco, CA. Defendant TINSLEY was very distant – noticeably rude – towards Plaintiff WINN's girlfriend. Defendant TINSLEY became increasingly more demanding about Plaintiff WINN's physical appearance. He wanted Plaintiff WINN to grow his hair out and start working out. On June 29, 2016, Defendant TINSLEY texted Plaintiff WINN, writing in part:

> "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw ... Dude you're the bait. Our secret (weapon)."

78. Plaintiff WINN responded to Defendant TINSLEY's request by sending a few head shots to Defendant TINSLEY via text. Plaintiff WINN sent the headshots to Defendant TINSLEY with the understanding and hope that the days of Defendant TINSLEY preying on him sexually were behind them and they could focus on the success of band. Plaintiff WINN felt he had to respond to Defendant TINSLEY – he felt he could not ignore the person paying his salary. While he tried to be light-hearted at first about Defendant TINSLEY's creepy, sex-laden text messages to him, responding with jokes to deflect, Plaintiff WINN always made it clear he was not interested in Defendant TINSLEY's advances. Plaintiff WINN would reluctantly respond to Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES – 32

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 32 of 91

TINSLEY's texts with things like "haha" and tried to skirt the questioning of Defendant TINSLEY by keeping things as business-oriented as possible.

79.    Defendant TINSLEY replied to Plaintiff WINN's headshot texts: "Damn you're hot!" Defendant TINSLEY continued to text Plaintiff WINN over the next several days, demanding that Plaintiff WINN take pictures that would increase Plaintiff WINN's sex appeal and how this was important for the continued success of the band. Defendant TINSLEY texted to Plaintiff WINN, in part:

> "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

80.    Plaintiff WINN replied to Defendant TINSLEY's text, saying that he was trying and asked what kind of work-out Defendant TINSLEY recommended: at home, or at a gym? Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part:

> "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?"

*See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

81.    In June 2016, the band played a show at a Speakeasy in New York City. Defendant TINSLEY arranged for TMZ to interview him outside of the venue, as well as having a local newscaster, Tamar Laine, interview the band. On this night, Plaintiff WINN drank excessively, and the last thing he remembers is going to sleep in a bed on Defendant TINSLEY's tour bus.

82.    In July 2016, Defendant TINSLEY booked a show for the band in Indiana only three (3) days in advance of the show date; the show was scheduled for Plaintiff WINN's birthday,

PLAINTIFF'S COMPLAINT FOR DAMAGES – 33

June 23rd. Plaintiff WINN and his girlfriend had confirmed plans that day for her to fly from her home in Redwood City to Seattle to spend Plaintiff WINN's birthday with him. Plaintiff WINN refused to go to the Indiana show unless Defendant TINSLEY agreed to fly Plaintiff WINN's girlfriend to Indiana, as well. After a heated argument between Plaintiff WINN and Defendant TINSLEY, Defendant TINSLEY reluctantly agreed to fly Plaintiff WINN's girlfriend to Indiana so she and Plaintiff WINN could spend Plaintiff WINN's birthday together. Shortly after the Indiana show/trip, Defendant TINSLEY asked his employee, Ryan Orr, to tell Plaintiff WINN that he "was not taking this seriously enough" (which Ryan Orr told Plaintiff WINN on behalf of Defendant TINSLEY).

83.    Defendant TINSLEY then demanded to all the band members that "none of the band members should be in a relationship – period." Plaintiff WINN and the other band members felt that Defendant TINSLEY did not have the right to dictate whether they could be in a relationship; the band members continued to date their respective girlfriends. While other members of the band had girlfriends, it was only after Plaintiff WINN had a girlfriend that Defendant TINSLEY demanded the band members not to be in relationships.

84.    In late July 2016, the band played a show in West Palm Beach, Florida. Upon arrival, Defendant TINSLEY said he had a "big burrito" for Plaintiff WINN when he got to Miami. When Plaintiff WINN arrived in Miami, Plaintiff WINN realized that the "big burrito" was a clear innuendo from Defendant TINSLEY regarding Defendant TINSLEY's penis. Defendant TINSLEY continued sending Plaintiff WINN text messages asking him to work-out and eat healthy, as his "sex appeal is crucial to this band ..." Defendant TINSLEY texted Plaintiff WINN in July 2016, in part:

PLAINTIFF'S COMPLAINT FOR DAMAGES – 34

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 34 of 91

"I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."

*See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

85. While on this trip to Miami, Defendant TINSLEY took the band out shopping. He bought Plaintiff WINN three (3) pairs of shoes, around a dozen shirts, a few pairs of pants, and a leather jacket. Defendant TINSLEY also gifted Plaintiff WINN a couple pairs of designer sunglasses. That night, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear.

86. Yet again, Plaintiff WINN was disgusted by Defendant TINSLEY's gross obsession with Plaintiff WINN's dirty undergarments – but Plaintiff WINN continued to endure Defendant TINSLEY's sexual obsessions for the sake and success of the band. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of Plaintiff WINN's dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all the lavish gifts Defendant TINSLEY had just bought him.

87. In mid-August 2016, the band played a show at the United Service Organizations Inc. ("USO") in Washington DC.[8] After the show, the band and Defendant TINSLEY traveled to Defendant TINSLEY's house/recording studio compound in Charlottesville, Virginia. Band member, Matt Frewen, decided he wanted to go back to see his family in Canada. Charlie Csontos,

---

[8] United Service Organizations Inc. (USO) is a nonprofit organization that provides live entertainment, such as comedians and musicians, and other programs to members of the United States Armed Forces and their families.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 35

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Plaintiff WINN, and Defendant TINSLEY were talking in the living room when Defendant TINSLEY spontaneously began talking about "the time he had masturbated next to James." He spoke about it in full detail and said that "the reason he did it" was because of "the way James looked while he was sleeping" – that "he could not stop himself." Plaintiff WINN hearing Defendant TINSLEY explain with absolute detail and clarity what he had done to Plaintiff WINN in Nov. 2015 (when Defendant TINSLEY ejaculated next to Plaintiff WINN while masturbating and touching Plaintiff WINN's buttocks, then chased Plaintiff WINN through the compound) – Plaintiff WINN realized that Defendant TINSLEY had lied to him when telling Plaintiff WINN that he had mixed-up his pills and that "he couldn't remember what he had done" to Plaintiff WINN that night in Nov. 2015. Plaintiff WINN immediately became nauseous in coming to this harsh realization about Defendant TINSLEY – he decided to immediately fly back to San Francisco to see his girlfriend.

88. Plaintiff WINN did not tell Defendant TINSLEY that he was going to San Francisco; Defendant TINSLEY assumed Plaintiff WINN was flying back to Seattle. The next day, when Defendant TINSLEY found out where Plaintiff WINN had gone, Defendant TINSLEY became enraged – Mr. Csontos told Plaintiff WINN how enraged Defendant TINSLEY had become and that Defendant TINSLEY had demanded that the whole band fly back to Seattle immediately for their next gig. Plaintiff WINN complied, but only so that he would be able to collect his belongings and leave the band. Upon arriving in to Seattle, Plaintiff WINN was told that the band needed to practice that night; he refused. He was angry at Mr. Csontos and disgusted by Defendant TINSLEY.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 36

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 36 of 91

89.     Defendant TINSLEY called Plaintiff WINN that evening, and Plaintiff WINN outlined for Defendant TINSLEY the numerous occasions on which Defendant TINSLEY had sexually harassed him. Plaintiff WINN also told Defendant TINSLEY that what he did was inexcusable, predatory, and that Plaintiff WINN could no longer trust him after learning how Defendant TINSLEY had sexually assaulted him. Defendant TINSLEY pleaded with Plaintiff WINN, trying to convince Plaintiff WINN to stay. Towards the end of their conversation, when it was becoming clear to Defendant TINSLEY that Plaintiff WINN would not change his mind and stay with the band, Defendant TINSLEY accused Plaintiff WINN of "wanting something to happen" in New York City after the Speakeasy show in June 2016. Plaintiff WINN laughed and asked Defendant TINSLEY what he was talking about, to which Defendant TINSLEY answered that Plaintiff WINN had been blacked-out drunk that night and had climbed into the bed on the tour bus with Defendant TINSLEY and another man (Matt Foley) and that Plaintiff WINN was "humping him" (Defendant TINSLEY).

90.     Defendant TINSLEY claimed he didn't know that Plaintiff WINN was blacked-out drunk, which is why he says Plaintiff WINN wanted something; he thought Plaintiff WINN was sober, but that was clearly not the case. Plaintiff WINN immediately told Defendant TINSLEY that he was done with the band and that Defendant TINSLEY was a sexual predator. Plaintiff WINN immediately moved out of the band's Seattle apartment and returned to San Francisco to be with his girlfriend. Defendant TINSLEY paid for Plaintiff WINN's trip back to San Francisco, his moving storage box, and gave him $1,000.00 to get situated. Plaintiff WINN has not directly spoken with Defendant TINSLEY since then and has had no contact with Defendant TINSLEY since getting a new phone.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 37

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 37 of 91

91. It was a huge decision for Plaintiff WINN to decide to leave the band – to walk away from the musical success and fulfillment he had only dreamed-of before Crystal Garden. He felt that if he had stayed, he would be living in shame. Plaintiff WINN felt there was no honor in simply staying for the money and the lifestyle he had lived through Defendant TINSLEY – he knew it would not have felt right to continue living a lie – knowing that Defendant TINSLEY had sexually preyed on him, lied to him, and would continue doing so.

92. Upon his return to San Francisco, Plaintiff WINN was not well – he was physically nauseous 24 hours a day. He lost his appetite and could hardly eat. He couldn't sleep and cried frequently – all he wanted to do was sit alone in a dark room. Plaintiff WINN didn't even want to listen to music or attend live shows, much less perform live music with his friends like he had before he moved to Seattle. Plaintiff WINN had slipped into a deep depression after leaving Crystal Garden. He began seeing a therapist weekly. Since leaving Crystal Garden, Plaintiff WINN has not been able to perform a musical show of his own. Plaintiff WINN has performed at only a couple of open mic shows recently, playing other people's music – he has not been able to write or perform any of his own music since leaving behind his life and employment with Defendant TINSLEY.

93. After months of Plaintiff WINN's worsening inability to "be present" with his girlfriend in most all situations, Plaintiff WINN's girlfriend broke-up with him. Plaintiff WINN became suicidal. Plaintiff WINN start working and became obsessed with staying busy – to the point of exhaustion. Plaintiff WINN worked non-stop just so he would not have to be alone with his thoughts. Plaintiff WINN then abruptly quit all his jobs in early 2017 to focus on getting well – his depression was not improving. Plaintiff WINN considered legal action against Defendant

PLAINTIFF'S COMPLAINT FOR DAMAGES – 38

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 38 of 91

TINSLEY at that time, but he was too scared to do so. He felt so alone – he was afraid of having to re-live what Defendant TINSLEY had done to him and worried about the effects it would have on his worsening depression.

94. As a result of the unlawful acts inflicted on Plaintiff WINN by his former employer, Defendant TINSLEY, Plaintiff WINN has suffered physical and emotional repercussions for which he has been treated by health professionals, including but not limited to:

- Serious depression
- Anxiety disorder and panic attacks
- Nausea and vomiting
- Severe stomach and digestive issues, including ongoing diarrhea
- Severe headaches
- Chest pain and heart palpitations
- Severe stress
- Insomnia
- Loss of romantic relationships, including that Plaintiff WINN's beloved girlfriend broke-up with him due to the severe emotional distress & depression;
- Loss of community/social network; and
- Loss of desire and ability to write and perform music to the level he was able prior to the last month of his employment with Defendant TINSLEY.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### SEXUAL HARASSMENT – *QUID PRO QUO*
### Violation of WLAD/RCW § 49.60

95. Plaintiff re-alleges and incorporates by reference paragraphs 1-94 of this Complaint.

96. Defendant TINSLEY violated the WLAD (RCW § 49.60, *et seq.*) when he required his employee (Plaintiff WINN) to submit to unwelcome sexual conduct as a condition of receiving pay and/or tangible job benefits.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 39

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 39 of 91

## A. General Background of WLAD and Sexual Harassment

97.     Sexual harassment constitutes a form of gender discrimination prohibited under the WLAD (RCW 49.60). The WLAD is potent – a broad and remedial statute that was originally enacted in 1949 as an WA State employment discrimination law. Washington State enacted the WLAD 15 years *before* the federal Civil Rights Act of 1964. WLAD contains a sweeping policy statement both denouncing discrimination in a variety of forms and mandating that the law be liberally construed for the accomplishment of the purposes thereof. In 1971, sex discrimination was added as a prohibited unfair practice in the WLAD (RCW 49.60).[9]

98.     RCW 49.60.010 provides, in part:

> The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of ... sex ...are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

RCW 49.60.030(1) provides that:

> The right to be free from discrimination because of ... sex ... is recognized as and declared to be a civil right. This right shall include, but not be limited to: (a) The right to obtain and hold employment without discrimination ...

RCW 49.60.180(1)-(3) provides that:

> [I]t is an unfair practice for any employer to "refuse to hire any person," to "discharge or bar any person from employment," or to "discriminate against any person in compensation or in other terms or conditions of employment because of ... sex." "Sex" means "gender." RCW 49.60.040(14).

---

[9] *See*: Laws 1971, 1st Ex.Sess., ch. 81, § 3. *See also*: *J.S.K. Enterprises*, *supra* at 54 (discussing the 1971 amendment).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 40

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 40 of 91

## B. **Elements of Sex Harassment Claim**

99.     Two theories, "disparate impact" and "disparate treatment," are available to a plaintiff attempting to prove discrimination in employment pursuant to RCW 49.60. In disparate treatment cases, the plaintiff must prove an unlawful discriminatory motive, meaning that the employer treats the plaintiff less favorably than others because of sex. The disparate impact theory does not require proof of discriminatory intent because it addresses the discriminatory consequences of seemingly objective employment practices. Plaintiff WINN's claims against Defendant TINSLEY fall under the "disparate treatment" theory because Defendant TINSLEY (employer) treated Plaintiff WINN less favorably than others because of sex.

100.    In disparate treatment cases like Plaintiff WINN's, the ultimate burden of proof is carried by the plaintiff, who (under the WLAD) must at trial "present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186–87, 23 P.3d 440 (2001) (*quoting Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311 (1995); *citing Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26 (1993), *amended*, 122 Wn.2d 483, 865 P.2d 507 (1994); *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, 149–50, 279 P.3d 500, 507–08 (Div. II, 2012). A "substantial factor" means that the protected characteristic was a significant motivating factor bringing about the employer's decision. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 444, 334 P.3d 541, 545 (2014); Substantial Factor, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.01.01 (6th ed.).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 41

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 41 of 91

101. In resisting a summary judgment motion, the plaintiff's burden is only to "offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1359 (9th Cir. 1985) (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1982)). The plaintiff is entitled to select the method by which she or he will prove a *prima facie* case of disparate treatment. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, at 491–92, 859 P.2d 26 (1993); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn.App. 734, 744, 315 P.3d 610, 616 (Div. II, 2013); *Dominguez-Curry v. Nev. Transp. Dep't.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Under any method of proof, the burdens on the plaintiff and defendant "are burdens of production, not of persuasion." *Barker v. Advanced Silicon Materials, LLC.*, 131 Wn.App. 616, 128 P.3d 633 (Div. III, 2006) (*citing Carle v. McChord Credit Union*, 65 Wn.App. 93, 98–102, 827 P.2d 1070 (Div. II, 1992)).

102. The most common methods of proof for the *prima facie* case are either by direct evidence of discrimination, or by applying the flexible framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). *Id.*, at 490–91. However, the plaintiff may choose "some other method to meet the burden of producing evidence that would allow the fact finder to find unlawful discrimination by a preponderance of the evidence." *Johnson v. Dept. of Social and Health Services*, 80 Wn.App. 212, 227, n. 21, 907 P.2d. 1223 (Div. II, 1996) (citing *Parsons v. St. Joseph's Hosp. and Health Care Ctr.*, 70 Wn.App. 804, 809, 856 P.2d 702 (Div. II, 1993)).

## C. *McDonnell Douglas* Burden-Shifting – Prima Facie Case

103. Under the first prong of the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, which creates a presumption of

PLAINTIFF'S COMPLAINT FOR DAMAGES – 42

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
ww.hendersonlawgroup.com

Exhibit A - Page 42 of 91

discrimination. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446, 334 P.3d 541, 545 (2014). Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the third prong of the *McDonnell Douglas* test requires the plaintiff to produce sufficient evidence that defendant's alleged nondiscriminatory reason for the employment action was a pretext." Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose. *Id.*

104. Not all cases fit into the *McDonnell Douglas* method of proof, but when it is used, the burden shifting is not a rigid, mechanized, or ritualistic process, but instead should be used flexibly to address the facts in different cases. *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, at 158-59, 279 P.3d 500, 507–08 (Div. II, 2012). Thus, the elements for a *prima facie* case are not absolute and vary based on different factual situations. *Hill*, 144 Wn.2d at 181, n.2 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1982); *McDonnell Douglas*, 411 U.S. at 802; *Grimwood v. Univ. of Puget Sound*, 110 Wn.2d 355, 363, 753 P.2d 517 (1988)). The *McDonnell Douglas* test has been stated variously. *See, e.g. Grimwood*, 110 Wn.2d at 362–64. "To state a *prima facie* case for gender discrimination in violation of Title VII and/or the WLAD, [plaintiff] a plaintiff must show at the summary judgment stage that (1) he/she belonged to a protected class; (2) he/she was qualified for the job; (3) he/she suffered an adverse employment action; and (4) similarly situated employees not in his/her protected class received more favorable treatment." *Wallace v. Grant Cty. Fire Dist. No. 5*, 2016 WL 5886880, at *7 (E.D. Wash. 2016).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 43

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W., 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 43 of 91

105. Once the plaintiff has made out the *prima facie* case, the employer then must produce evidence of a legitimate non-discriminatory reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993); *Burdine*, 450 U.S. at 255–56. If the employer fails to meet this production burden, the plaintiff is entitled to an order establishing liability as a matter of law. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 70, 821 P.2d 18 (1991).

106. If the employer fulfills the burden of production by showing a non-discriminatory reason for the action, the plaintiff must in turn prove that the employer's articulated reasons are a mere pretext for a discriminatory purpose. "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either: (1) that the defendant's reason is pretextual; or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446–47, 334 P.3d 541, 546 (2014); *see also Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) ("An employee can prove pretext either: (1) directly, by showing that unlawful discrimination more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.") (internal quotation marks omitted). *But see: Farah v. Hertz Transporting, Inc.*, 196 Wash. App. 171, 177–78, 383 P.3d 552, 557 (2016) (while

PLAINTIFF'S COMPLAINT FOR DAMAGES – 44

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 44 of 91

instruction that find employer's explanation to be is not believable might be appropriate, it was not error to refuse to give the instruction as the instructions given were adequate).[10]

## D. *Quid Pro Quo* **Sexual Harassment**

107. Two types of sexual harassment evolved in the case law: *quid pro quo* and hostile work environment. *Antonius v. King County,* 153 Wn.2d 256, 261, 103 P.3d 729 (2004). *Quid pro quo* harassment exists where a supervisor requires an employee to submit to unwelcome sexual conduct as a condition of receiving tangible job benefits or takes negative, tangible employment actions against an employee for rejecting such advances. *Glasgow v. Georgia Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985); *see also*: *DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996). Hostile work environment harassment (discussed in detail below under "SECOND CAUSE OF ACTION") exists where co-workers or supervisors direct conduct or behavior toward an employee because of his sex that creates an intimidating, hostile, or offensive working environment. *Id.*

108. WA State courts continue to recognize *quid pro quo* sexual harassment as distinct from hostile work environment sexual harassment. *See e.g.*: *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729, 735 (2004); *Washington v. Boeing Co.*, 105 Wn. App. 1, 9-10, 19 P.3d 1041 (Div. I, 2000); *Henningsen v. Worldcom*, 102 Wn. App. 828, 836-37, 9 P.3d 948 (Div. I, 2000).

---

[10] If there is no evidence of pretext, the plaintiff has not carried the burden of production and the employer is entitled to dismissal as a matter of law. *Kastanis*, 122 Wn.2d at 491 (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011-12 (1st Cir. 1979) and *Grimwood*, 110 Wn.2d at 365; *Douglas*, 656 F.2d at 535; *Hill*, 144 Wn.2d at 185-86.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 45

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

109. To establish a *quid pro quo* sexual harassment claim, an employee must prove that the supervisor or manager subjected him/her to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened a change in the plaintiff's status or conditions of employment if he/she submitted to the conduct or advances. *See: DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996); WPI 330.22. *See also: Schonauer v. DCR Entertainment*, 79 Wn. App. 808, 824, 905 P.2d 392 (Div. II, 1995), *rev. den'd*, 129 Wn.2d 1014 (1996).

110. "In contrast to hostile work environment harassment, the harasser's conduct need not be pervasive, and *one incident* may be enough to support a cause of action." *Schonauer*, 79 Wn. App. at 823 (*quoting Keppler v. Hinsdale Township High Sch. Dist. 86*, 715 F. Supp. 862, 867 (N.D. Ill. 1989)) (emphasis added). Some courts appear to articulate another requirement -- that the *quid pro quo* involves a tangible job "benefit" or detriment. In a *quid pro quo* harassment case, the plaintiff "seeks damages from her employer for a supervisor's or the employer's extortion or attempted extortion of 'sexual consideration ... as a *quid pro quo* for job benefits.'" *Thompson v. Berta Enterprises*, 72 Wn. App. 531, 536, 864 P.2d 983 (Div. I, 1994) citing *Glasgow*, 103 Wn.2d at 405; *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399 (1986). If an employee submits to a supervisor's threat conditioning employment benefits on sexual activity, the "tangible employment action" requirement is met. *Holly D. v. Cal. Inst. Of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003).

111. Harassment is unlawful when the employee accedes to the supervisor's unlawful demands and receives a beneficial tangible employment benefit, as well. *Henningsen v. Worldcom*, 102 Wn. App. 828, 836-37, 9 P.3d 948 (Div. I, 2000).

PLAINTIFF'S COMPLAINT FOR DAMAGES - 46

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 46 of 91

> "[A]lthough the tangible employment action was a **promotion** rather than a demotion or other action having adverse economic consequences, **the promotion was coupled with repeated sexual demands and implicit threats of adverse employment consequences unless [plaintiff] continued to pay what [her supervisor] felt she owed him for the promotion. The hostile work environment was inextricably tied to the tangible employment decision.**"

*Henningsen,* 102 Wn. App. at 843 (emphasis added).

112.    Here, like in *Henningsen,* employer Defendant TINSLEY made it clear to employee Plaintiff WINN (verbally and via text messages) that Plaintiff WINN's continued compliance with Defendant TINSLEY's sex-based demands was "inextricably tied" to Plaintiff WINN's continued "success" with the band. *Just three months after Plaintiff WINN opposed Defendant TINSLEY's illegal activity* in Nov. 2015 (by complaining to Defendant TINSLEY and Defendant TINSLEY's supervisor-level employee that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop) Defendant TINSLEY continued with his sex-based demands of Plaintiff WINN, tying Plaintiff WINN's compliance with Defendant TINSLEY's demands to Plaintiff WINN's continued "success" with the band:

- March 2016 – Defendant TINSLEY texted Plaintiff WINN that he wanted to **"sexually exploit him for the band's success."** (emphasis added)

- March 28, 2016, at 10:09 PM – Defendant TINSLEY texted Plaintiff WINN: "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. **Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear … We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)."

- June 2016 – Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy. I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band.**

PLAINTIFF'S COMPLAINT FOR DAMAGES – 47

Exhibit A - Page 47 of 91

**You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." (emphasis added)**

113. Plaintiff WINN can clearly establish a *quid pro quo* sexual harassment claim against Defendant TINSLEY, as the evidence supports that Defendant TINSLEY subjected Plaintiff WINN to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened Plaintiff WINN that conceding to Defendant TINSLEY's sexual advances and/or sex-based demands would equate to Plaintiff WINN's continued employment/financial support/success of himself and even the band as whole. Examples include, but are not limited to:

- Nov. 2015: Defendant TINSLEY bought five (5) tickets to the Seahawks game for his employee, Plaintiff WINN, and other band members & friends. **Defendant TINSLEY commented on the cost and said to Plaintiff WINN "man you better suck my dick or something."** (emphasis added)

- Nov. 2015: Defendant TINSLEY **ejaculated directly next to (touching) his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks.** Plaintiff WINN immediately awoke, screamed "What the fuck??!" to Defendant TINSLEY and ran out of the room. Defendant TINSLEY then chased Plaintiff WINN through the house and nearby recording studio. Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- March 2016: Defendant TINSLEY texted Plaintiff WINN that he wanted to **"sexually exploit him for the band's success."** (emphasis added)

- March 2016: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. **I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear** ... We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. **I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)." (emphasis added)

PLAINTIFF'S COMPLAINT FOR DAMAGES – 48

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
w .hendersonlawgroup.com

Exhibit A - Page 48 of 91

- June 2016: Defendant TINSLEY texted Plaintiff WINN, "**I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny.** :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol." (emphasis added)

- June 2016: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. **Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw ... Dude you're the bait. Our secret (weapon)."** (emphasis added)

- July 2016: Defendant TINSLEY texted Plaintiff WINN, "**I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."** (emphasis added)

- July 2016: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, **I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?"** *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

- July 2016: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band**. You have one of the most beautiful faces of anyone I've ever known. **I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."** *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

- July 2016: While on tour in Miami, FL, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of his dirty underwear that were in the bathroom; **Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him. Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible.** You can keep your pants on, no belt or underwear or shoes or socks.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 49

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 49 of 91

I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

114.    Defendant TINSLEY exploited his employee, Plaintiff WINN, for his own sexual pleasure and fantasies – as well as for the success of the band, Crystal Garden. Plaintiff WINN can clearly establish a *quid pro quo* sexual harassment claim against Defendant TINSLEY, as the evidence supports that Defendant TINSLEY subjected Plaintiff WINN to unwelcome sexual conduct or advances and explicitly or implicitly promised or threatened Plaintiff WINN that conceding to Defendant TINSLEY's sexual advances and/or sex-based demands would equate to Plaintiff WINN's continued employment/financial support/success of himself and even the band as whole.

## E. Damages for Violation of WLAD/RCW § 49.60

115.    As a direct result of Defendant TINSLEY's *quid pro quo* sexual harassment against Plaintiff WINN, as herein outlined, Plaintiff WINN has suffered loss for which he is owed damages from Defendant TINSLEY, including lost wages, back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain and suffering, damage to reputation, damage to future earning potential, depression, anxiety, and significant loss of enjoyment of life, attorney's fees and costs.

116.    Remedies for violation of the WLAD are broad. The WLAD provides that:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or *to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees* or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended...

PLAINTIFF'S COMPLAINT FOR DAMAGES – 50

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 50 of 91

*See* RCW 49.60.030(2). This includes, but is not limited to economic damages (back pay/front pay), compensatory damages, lost wages, impact of future earnings, recovery for personal injuries for emotional distress, humiliation, pain and suffering, damage to reputation, damage to future earning potential, depression, anxiety, and significant loss of enjoyment of life, attorney's fees and costs.

117. Economic damages here will be based primarily on Plaintiff WINN's "Post-Termination Circumstance" and are comprised of Back Pay and Front Pay.

## Back Pay Damages

118. Back pay damages place the Plaintiff in the proper wage position they would have occupied absent discrimination from the Defendant. Calculated from the start date of discrimination to the date of judgment (plus 12% annual interest). *See Martini v. Boeing Co.*, 137 Wn.2d 357, 367 (1999). Once the plaintiff establishes that unlawful discrimination caused her loss, she is entitled to back pay. *See Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417-18 (1975) (holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole).

119. Back pay damages compensate the victim of discrimination for lost wages "for a reasonably certain period of time that does not exceed the likely duration of the discriminated employment." *See, e.g., Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 114 Wn. App. 80, 88, 55 P.3d 1208, 1212 (2002) (*citing Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 43 P.3d 1223 (2002)). Back pay damages are awarded to victims of discrimination based on their "Post-Termination Circumstance" until the time the claims are resolved. For these damages, WA courts have allowed jury awards of 2.5 years loss of wages and pension benefits as

PLAINTIFF'S COMPLAINT FOR DAMAGES - 51

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W., 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 51 of 91

compensation for a Plaintiff employee who, like Plaintiff WINN, has become withdrawn from his former pre-discharge life as a result of his former employer's unlawful actions, is therefore not engaged in "an active employment search," and "[has] not returned to [a] labor market of comparable earnings [to that they were earning at the time of termination." *See, e.g., Collins v. Clark County Fire Dist. No. 5*, 231 P.3d 1211, 155 Wn.App. 48 (Wash.App. Div. 2, 2010).

120. Since his constructive discharge by Defendant TINSLEY, Plaintiff WINN's humiliation and severe emotional distress have caused him to have paranoia and fear about returning to musical work to the level he had when working for Defendant TINSLEY. He has not engaged in an active employment search and has not returned to a labor market of comparable earnings to that he was earning at the time of his constructive discharge from Defendant TINSLEY. As such, Plaintiff WINN has earned *far below* his earning potential (certainly well below what he had earned working for Defendant TINSLEY) and below that which he *would have earned* if he still retained his employment position with Defendant TINSLEY.

121. Back pay is generally awarded from the occurrence of the alleged discrimination until the harm suffered by the plaintiff is redressed. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986).

## Front Pay Damages

122. Front pay and loss of future earning damages are prospective compensation from the date of trial (or resolution of the case) to a point in the future when the successful plaintiff can be presumed to be re-employed or retired. *See, e.g., Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160*, 114 Wn. App. 80, 88, 55 P.3d 1208, 1212 (2002). Whereas the calculation of back pay involves ascertaining economic losses already suffered, calculating

PLAINTIFF'S COMPLAINT FOR DAMAGES – 52

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel: (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 52 of 91

front pay requires anticipating economic losses that the plaintiff will experience in the future. The method for calculating front pay involves three steps: (1) project the plaintiff's likely earnings from the defendant but for the illegal act for the period he or she could reasonably be expected to have worked for the defendant; (2) from that amount subtract the plaintiff's projected earnings from alternate employment; and (3) reduce the resulting estimated future earnings to a present, lump-sum value.

123. Plaintiff WINN was employed by Defendant TINSLEY for open-ended, on-going musical work with band, Crystal Garden, as well as for open-ended, on-going work on Defendant TINSLEY's film documentary (featuring Plaintiff WINN). Absent the sexual harassment, retaliation and constructive discharge from Defendant TINSLEY, Plaintiff WINN would have continued to work for Defendant TINSLEY on this open-ended, on-going employment certainly for years following his August 2015 constructive discharge.

124. Under Washington law, "[o]nce an employee produces evidence from which a reasonable future employment period may be projected, the amount of front pay, including the likely duration of employment, should go to the jury."[11] Jury verdicts with substantial front pay should be upheld where sufficient evidence justifies the award even under the federal anti-discrimination statutes. *See, e.g., Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2nd Cir. 1992) (upholding 17-year front-pay award to age discrimination victim), *cert. den'd*, 506 U.S. 826, 113

---

[11] *Lords v. Northern Automotive*, 75 Wn. App. 589, 607, 881 P.2d 256 (Div. 3, 1994) (the court specifically rejected the trial court's arbitrary limit of five years and remanded the case for a new trial on economic damages, correctly concluding: "[F]ront pay, as well as back pay, is a consideration for the jury."). *Xieng v. Peoples Nat. Bank of Washington*, 63 Wn.App. 572, 583, 821 P.2d 520 (Wash.App. Div. 1 1991); *Hayes v. Trulock*, 51 Wn. App. 795, 802, 755 P.2d 830 (Div. I, 1988); *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 114 Wn. App. 80, 89-90, 55 P.3d 1208 (Div. I, 2002), *rev'd on other grounds*, 151 Wn.2d 203, 69 P.3d 875 (2003); *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 163, 43 P.3d 1223 (2002).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 53

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

S.Ct. 82 (1992); *Newhouse v. McCormick & Co., Inc.*, 910 F. Supp. 1451 (D. Neb. 1996) (finding that a jury could reasonably believe that a vigorous-appearing 63-year-old man who loved his work and had no plans to retire would have worked to age 70) *aff'd in part and rev'd in part*, 110 F.3d 635 (8th Cir. 1997).

## Compensatory Damages

125. The WLAD provides for an award of compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, and loss of quality of life. *Martini v. Boeing Co.*, 137 Wn.2d 357, 367 (1999); *Ellingson v. Spokane Mortg. Co.*, 19 Wn.App. 48, 573 P.2d 389 (1978); *Dean v. Municipality of Metropolitan Seattle-Metro*, 104 Wn2d 627, 708 P.2d 393 (1985). Damages for loss of future earning capacity are awarded to claimants like Plaintiff WINN whose ability to earn income will continue to be impaired after the trial (or resolution of their legal case) due to factors including severe emotional distress. Compensation for loss of earning capacity is, theoretically, not compensation for lost future wages, but is compensation for loss of the ability to earn income as the employee had earned at the time of termination (prior to the extreme emotional distress that followed as a result of the termination or constructive discharge). It is not loss of earnings but, rather, loss of earning capacity for which compensation must be made.... A capital asset has been lost: what was its value? *See, e.g., Andrews v. Grand & Toy Alberta Ltd.*, 2 S.C.R. 229 at 251 (1978). This is a question for the jury.

126. Under the WLAD/RCW 49.60, medical testimony is not necessary to establish the causation of emotional distress damages. *Negron v. Snoqualmie Valley Hosp.*, 86 Wn. App. 579, 936 P.2d 55, 1997 Wash. App. LEXIS 706 (Wash. Ct. App. 1997). Under WLAD/RCW 49.60, a

PLAINTIFF'S COMPLAINT FOR DAMAGES – 54

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 54 of 91

plaintiff is not required to prove that emotional distress was intended or reasonably foreseeable in order to recover damages for distress. *Id*.

## Attorney's Fees

127. Attorney's Fees are available and awarded to victims of sexual harassment pursuant to WLAD. RCW 49.60.030(2). *See also, Martini v. Boeing Co.*, 137 Wn.2d 357, 367 (1999). Washington has two important statutes providing for recovery of attorney's fees, Washington's wage statute, RCW 49.48.030, and the WLAD, RCW 49.60.030. RCW 49.48.030 provides: "In any action in which any person is successful in recovering judgment for wages or salary owed to him [sic], reasonable attorney fees ... shall be assessed against said employer..."

128. RCW 49.60.030 provides that if a plaintiff prevails, she or he may recover reasonable attorneys' fees. In determining what constitutes a reasonable fee award, courts should be mindful that this remedy provision is "to be construed liberally in order to encourage enforcement of the Law Against Discrimination." *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 572, 740 P.2d 1379 (1987), *citing Anderson v. Gold Seal Vineyard, Inc.*, 81 Wn.2d 863, 505 P.2d 790 (1985); *see also*: *Moritzky v. Herberlien*, 40 Wn. App. 181, 183, 697 P.2d 1023 (1985); *Pham v. City of Seattle*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007).

129. The courts have viewed prevailing market rates as the best determinate of "reasonable fees." In *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983), the Washington Supreme Court adopted the federal formula for calculating attorneys' fee awards and accepted and expanded on the importance and propriety of a multiplier.

130. Plaintiff WINN is entitled to, and will seek, attorney's fees against Defendant TINSLEY.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 55

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 55 of 91

## SECOND CAUSE OF ACTION
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### Violation of WLAD/RCW § 49.60

131.    Plaintiff WINN re-alleges and incorporates by reference paragraphs 1-130 of this Complaint.

132.    Defendant TINSLEY violated the WLAD (RCW § 49.60, *et seq.*) when he directed conduct or behavior toward his employee (Plaintiff WINN) because of Plaintiff WINN's sex that created an intimidating, hostile, or offensive working environment for Plaintiff WINN that became a condition of Plaintiff WINN's work environment.

133.    Although Defendant TINSLEY's unlawful acts against Plaintiff WINN meet the elements for quid pro quo sexual harassment in violation of WLAD (as outlined above), Defendant TINSLEY's acts against Plaintiff WINN also meet the criteria for hostile work environment sexual harassment in violation of the WLAD. Pursuant to the Washington State Law Against Discrimination (WLAD):

> "[i]t is an unfair practice for any employer ... [t]o discriminate against any person in compensation or in other terms or *conditions of employment* because of age, sex/gender, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability[.]"

*See* RCW 49.60.180(3) (emphasis added).

134.    The WLAD protects employees from hostile work environment. *See, e.g., Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (*citing Coville v. Cobarc Servs., Inc.*, 73 Wash.App. 433, 438, 869 P.2d 1103 (1994); *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985)). To demonstrate a hostile work environment claim, a plaintiff must prove that:

- The harassment was unwelcome;

PLAINTIFF'S COMPLAINT FOR DAMAGES – 56

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 56 of 91

- The harassment was because of sex;
- The harassment affected the terms or conditions of employment; and
- The harassment is imputable to the employer.

*See Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 124 Wn.App. 71 (Wash.App. Div. 1 2004), *citing Robel v. Roundup Corp.*, 148 Wash.2d 35, 44-45, 59 P.3d 611 (2002) and *Glasgow v. Georgia-Pac. Corp.*, 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985). Here, Plaintiff WINN will present clear evidence that he meets all four elements required for gender-based hostile work environment by Defendant TINSLEY in violation of the WLAD (RCW 49.60):

## A. **Defendant TINSLEY's Conduct was Unwelcome by Plaintiff WINN**

135.    Defendant TINSLEY's harassment towards Plaintiff WINN based on his gender/sex was clearly unwelcome. Plaintiff WINN made it very clear on several occasions to Defendant TINSLEY and to supervisor-level employees of Defendant TINSLEY's (*e.g.*, Mr. Craig Conard, Crystal Garden's band music engineer and longtime employee of Defendant TINSLEY) that Defendant TINSLEY's sexual harassing acts toward him were not welcome:

- Immediately after the Nov. 2015 incident at Defendant TINSLEY's home/recording studio, when Defendant TINSLEY ejaculated right next to his sleeping employee (Plaintiff WINN) while touching Plaintiff WINN's buttocks, Plaintiff WINN opposed Defendant TINSLEY's illegal activity of sexually assaulting him when he immediately jumped up saying to Defendant TINSLEY in shock, "What the fuck?!" Plaintiff WINN then ran from Defendant TINSLEY as Defendant TINSLEY followed Plaintiff WINN through the recording studio and house. Plaintiff WINN ultimately had to hide in the bathroom to avoid Defendant TINSLEY's continued sexual advances that evening. Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong, unwelcome, and he complained to his employer (Defendant TINSLEY) that he wanted the behavior to stop.

- A few hours later, Plaintiff WINN again made it clear that Defendant TINSLEY's sex-based behavior towards him was unwelcome when he spoke with Mr. Craig Conard, Crystal Garden's band music engineer and a longtime employee of Defendant TINSLEY's. Plaintiff WINN explained to Mr. Craig

PLAINTIFF'S COMPLAINT FOR DAMAGES – 57

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Conard in detail the sexual acts that Defendant TINSLEY had inflicted upon him just a few hours prior. Mr. Craig Conard is a longtime employee of Defendant TINSLEY's who worked with Plaintiff WINN and Crystal Garden in the recording of their music. Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong, unwelcome, and he complained to his employer that he wanted the behavior to stop.

• Defendant TINSLEY tried to convince Plaintiff WINN to stay. Plaintiff WINN again made it crystal clear that Defendant TINSLEY's sex-based behavior towards him was unwelcome when he flat-out refused to stay, saying that he didn't want to be alone with his employer Defendant TINSLEY due to the unwelcome sexual acts he had just endured from Defendant TINSLEY.

The "unwelcome" element of Plaintiff WINN's hostile work environment claim against Defendant TINSLEY is clearly met.

## B. The Harassment from Defendant TINSLEY was "Because of Sex"

136. A plaintiff may demonstrate pretext or discriminatory intent by the employer by showing disparate treatment, *i.e.*, that he was treated differently from similarly situated employees outside the protected class, whether intentionally *or unintentionally* by the employer. The pattern of results regarding treatment of those in and outside the protected class is what the courts consider, not the intentional or unintentional mental state of the employer in carrying out those acts. *See Hume v. Am. Disposal Co.*, 124 Wash.2d 656, 668, 880 P.2d 988 (1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995).

137. Plaintiffs have used avenues of proof similar to those used in discrimination cases involving other protected classifications, including: (1) adverse treatment compared to similarly situated employees of the other sex, *Marquis v. City of Spokane*, 130 Wn.2d 97, at 114-115, 922 P.2d 43 (1996); *Crownover v. State ex rel. Dept. of Transp.*, 165 Wn.App. 131, 147, 265 P.3d 971, 980 (Div. III, 2011) *review den'd,* 173 Wn.2d 1030, 274 P.3d 374 (2012) and (2) evidence of

PLAINTIFF'S COMPLAINT FOR DAMAGES – 58

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 58 of 91

hostility to employees of one sex by the actor or decision-maker, *Payne v. Children's Home Society*, 77 Wn.App. 507, 511–13, 892 P.2d 1102 (Div. III, 1995); *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 356-257, 172 P.3d 688 (2007) (hostility to the presence of pregnant women in the workplace suffices to prove sex discrimination).

138. These avenues of proof also apply in sexual harassment cases, where there is the additional avenue of proof that plaintiff suffered sexually offensive verbiage or conduct raising an un-rebutted inference that the conduct was directed at her or him because of sex. *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1165–67 (9th Cir. 2002) (plurality of *en banc* panel) (Plaintiff stated a Title VII claim because "[s]uch harassment – 'grabbing, poking, rubbing or mouthing areas of the body linked to sexuality' – is inescapably 'because of ... sex.'") (*citing Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)). In sexual harassment cases involving "explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998).

139. Here, Defendant TINSLEY's sex-based pervasive workplace harassment towards Plaintiff WINN was directed towards Defendant TINSLEY's employees of the male gender, including Plaintiff WINN. As a male employee targeted sexually by his employer, Defendant TINSLEY, Plaintiff WINN's male gender becomes Plaintiff WINN's "protected class" because his male gender is one of the motivating factors for Defendant TINSLEY's harassment towards Plaintiff WINN (as opposed to if Plaintiff WINN were female gender – Defendant TINSLEY did not target the female gender).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 59

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 59 of 91

### a) **Pattern by Defendant TINSLEY of sexually harassing his male gender employees**

140.     In addition to Plaintiff WINN, other current and former male employees of Defendant TINSLEY have endured sex-based harassment. Charlie Csontos (Plaintiff WINN's Crystal Garden band-mate) shared with Plaintiff WINN in Nov. 2015 that he had experienced similar creepy sexually harassing acts from their employer, Defendant TINSLEY, when he and Defendant TINSLEY were in London a few months prior. Charlie, like Plaintiff WINN, is male and this continues the pattern by Defendant TINSLEY of sexually harassing his male gender employees. There have also been complaints brought forward by other former young male employees of Defendant TINSLEY, claiming similar sexually harassing acts as Plaintiff WINN and Charlie experienced. Those claims were settled out of court for an undisclosed financial sum. Here, Plaintiff WINN can clearly demonstrate pretext or discriminatory intent by Defendant TINSLEY by showing disparate treatment.

### C. **Harassment affected the terms or conditions of Plaintiff WINN's employment**

141.     The WA state Supreme Court addressed this element in *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985), stating:

> Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.

*See Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (*citing Glasgow*, 103 Wash.2d at 406, 693 P.2d 708); *see also Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004) (*citing Glasgow*, 103 Wash.2d at 406-07, 693 P.2d 708).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 60

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 60 of 91

142.　Here, Defendant TINSLEY's pervasive workplace harassment towards his employee, Plaintiff WINN, continued for twelve (12) months and Defendant TINSLEY's consistent failure to cease the clearly unwelcome sex-based harassment he was inflicting upon Plaintiff WINN clearly affected the terms and conditions of Plaintiff WINN's employment with Defendant TINSLEY.　Defendant TINSLEY's consistent sex-based harassing work-place behavior towards Plaintiff WINN was not "casual, isolated or trivial," as evidenced by:

- The egregious nature of the Nov. 2015 incident where Defendant TINSLEY ejaculated directly next to (touching) his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks, then Defendant TINSLEY chased Plaintiff WINN through the house and nearby recording studio. Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- The numerous sexual text messages and other sex-based demands from Defendant TINSLEY to Plaintiff WINN from January-August 2016 (at which time Plaintiff WINN finally felt he had no choice but to resign from his employment with Defendant TINSLEY/constructive discharge due to the ongoing pervasive sexual harassment he was forced to endure), including, but not limited to:

  ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN that he wanted to "sexually exploit him for the band's success."

  ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN that he "was masturbating at the thought of a sexy photo shoot of James."

  ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear ... We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

PLAINTIFF'S COMPLAINT FOR DAMAGES – 61

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 61 of 91

✓ June 2016: Defendant TINSLEY texted Plaintiff WINN, "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

✓ June 2016: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw ... Dude you're the bait. Our secret (weapon)."

✓ July 2016: Defendant TINSLEY texted to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

✓ July 2016: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?" See Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ July 2016: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." See Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ July 2016: While on tour in Miami, FL. Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of his dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him. Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or

PLAINTIFF'S COMPLAINT FOR DAMAGES – 62

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 62 of 91

socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

143. Defendant TINSLEY's 12+ months of sex-based harassing acts towards Plaintiff WINN were clearly not "casual, isolated or trivial." The pervasiveness of Defendant TINSLEY's sex-based text messages, sex-based verbal demands and sex-based physical acts towards his employee, Plaintiff WINN, clearly affected the terms or conditions of Plaintiff WINN's employment and meet the third element required for proving hostile work environment.

### D. Imputable to the Employer (Defendant TINSLEY) – Vicarious Liability

144. The fourth element of Plaintiff WINN's prima facie case for hostile work environment against his employer, Defendant TINSLEY, involves imputing the actions of Plaintiff WINN's harasser (Defendant TINSLEY) to Plaintiff WINN's employer – in this case, the two are one in the same. This fourth element is also referred to as Vicarious Liability. This element is clearly met here.

145. Harassment is imputed to an employer in one of two ways. *See Davis v. Fred's Appliance, Inc.,* 287 P.3d 51 (Wash.App. Div. 3 2012) (*citing Glasgow*, 103 Wash.2d at 407, 693 P.2d 708); *see also Vance v. Ball State University*, 133 S. Ct. 2434 (2013).

- First, it can be imputed to the employer if the harasser is an owner, partner, corporate officer, or manager.[12]

**OR**

- Second, it can be imputed to the employer if the harasser is the plaintiff's supervisor or co-worker if the employer "authorized, knew, or should have

---

[12] Under WA law, harassment by a company owner, manager, partner, or corporate officer is automatically imputed to the employer. *Glasgow*, 103 Wn.2d at 405: *see also: DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 63

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 63 of 91

> known of the harassment and ... failed to take reasonably prompt and adequate corrective action."

*Id.* Only one of these two scenarios is required under the law to meet the fourth element in proving hostile work environment. The first scenario exists here: Defendant TINSLEY (the harasser) was at all times relevant the creator and owner of Crystal Garden and the employer of Plaintiff WINN. As such, Defendant TINSLEY qualifies as "an owner, partner, corporate officer, or manager" of Plaintiff WINN's employer and thus liability for Defendant TINSLEY's sex-based harassment towards Plaintiff WINN is clearly "imputed" to Defendant TINSLEY. This factor is more at issue in scenarios where the harasser is the supervisor of a large company and the company denies ever having knowledge of the harassing acts of that supervisor towards the plaintiff's employee.[13]

146.    Plaintiff WINN will present clear evidence at trial that he meets all four elements required for proving that his employer (Defendant TINSLEY) created and perpetuated a pervasive gender/sex-based hostile work environment in violation of the WLAD (RCW 49.60).

\* \* \* \* \*

147.    It is worth noting that evidence of intentional discrimination or even intent by the employer is not required for establishing disparate treatment and hostile work environment claims, but rather "[t]he purpose of showing disparate treatment is to create an inference of discriminatory

---

[13] Regarding this element of hostile work environment, the federal Equal Employment Opportunity Commission ("EEOC") has noted: "When an employer receives a complaint or otherwise learns of alleged ... harassment in the workplace, the employer should investigate promptly and thoroughly. The employer should take immediate and appropriate corrective action by doing whatever is necessary to end the harassment, make the victim whole by restoring lost employment benefits or opportunities, and prevent the misconduct from recurring. Disciplinary action against the offending supervisor or employee, ranging from reprimand to discharge, may be necessary. Generally, the corrective action should reflect the severity of the conduct." *See Perry v. Costco Wholesale, Inc.,* 98 P.3d 1264, 123 Wn.App. 783 (Wash.App. Div. 1 2004) (*citing* U.S. EEOC, Policy Guidance on Current Issues of Harassment – http://www.eeoc.gov/policy/docs/currentissues.html (site last visited Dec. 31, 2017)).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 64

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 64 of 91

animus because direct evidence of discrimination is rarely available." *Johnson v. Department of Social & Health Services*, 907 P.2d 1223, 1232 (*citing Carle v. McChord Credit Union*, 65 Wash.App. 93, 827 P.2d 1070 (1992) (affirming denial of directed verdict where no direct evidence of discriminatory intent was presented)).

148.    The Ninth Circuit (of which WA State is a part and follows) held in *EEOC v. NEA (E.E.O.C. v. National Educ. Ass'n., Alaska*, 422 F.3d 840 (9th Cir. 2005)) that "plaintiffs do not need to prove that Harvey had a specific intent to discriminate against women or to target them 'as women,' as the district court put it, whether sexually or otherwise." 422 F.3d at 844. Quoting a previous Ninth Circuit decision, the Court recognized that "Title VII is not a fault-based tort scheme. Title VII is aimed at the consequences or effects of an employment practice **and not ... the motivation of co-workers or employers.**" *Id.* at 844-45, *quoting Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir. 1991) (Emphasis added) "(In *Ellison*) we held that conduct may be 'unlawful sexual harassment even when harassers do not realize that their conduct creates a hostile working environment.'" *Id.* at 845, *quoting Ellison*, 924 F.2d at 880.

149.    In *Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991) the court discusses the "pervasiveness" element of a hostile work environment case but in so doing, on page 878, explains how the intent of the alleged harasser is irrelevant – what matters is if a reasonable person in the alleged victim's shoes would find the behavior offensive:

> We therefore prefer to analyze harassment from the victim's perspective. 3A complete understanding of the victim's view requires, among other things, an analysis of the different perspectives of men and women. Conduct that many men consider unobjectionable may offend many women. *See, e.g., Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988) ("A male supervisor might believe, for example, that it is legitimate for him to tell a female subordinate that she has a 'great figure' or 'nice legs.' I The female

PLAINTIFF'S COMPLAINT FOR DAMAGES – 65

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

subordinate, however, may find such comments offensive"); Yates, 819 F.2d at 637, n. 2 ("men and women are vulnerable in different ways and offended by different behavior"). 2See also Ehrenreich, Pluralist Myths and Powerless Men: The Ideology of Reasonableness in Sexual Harassment Law, 99 Yale L.J. 1177, 1207-1208 (1990) (men tend to view some forms of sexual harassment as "harmless social interactions to which only overly-sensitive women would object"); Abrams, Gender Discrimination and the Transformation of Workplace Norms, 42 Vand.L.Rev. 1183, 1203 (1989) (the characteristically male view depicts sexual harassment as comparatively harmless amusement).

*Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991). Under 9th Circuit and WA State law, it does not matter if the alleged harasser thinks what he/she is doing is inoffensive and not malicious. As such, for Plaintiff WINN to prevail on his *prima facie* case of sexual harassment against Defendant TINSLEY, it does not matter if Defendant TINSLEY thinks or thought at the time that what he was doing was inoffensive and/or not malicious.

### E. Damages for Hostile Work Environment in Violation of WLAD/RCW § 49.60

150.    As a result of Defendant TINSLEY creating and perpetuating a hostile work environment against his employee, Plaintiff WINN, in violation of the WLAD (RCW 49.60), Plaintiff WINN is entitled to the same damages under the WLAD as he is entitled to for Defendant TINSLEY's quid pro quo sexual harassment against him (outlined in detail above). Defendant TINSLEY's violation of the WLAD for hostile work environment against Plaintiff WINN provides for an award to Plaintiff WINN of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 66

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 66 of 91

## THIRD CAUSE OF ACTION
### RETALIATION – Violation of WLAD/RCW § 49.60

151. Plaintiff re-alleges and incorporates by reference paragraphs 1-150 of this Complaint.

152. Defendant TINSLEY's conduct against Plaintiff WINN, as herein outlined, constitutes retaliation in violation of RCW 49.60.210(1), which prohibits an employer from discriminating against an employee because he/she has opposed a discriminatory practice protected by the WLAD/RCW 49.60.

153. "The WLAD forbids an employer to ... discriminate against an employee in retaliation for his/her 'oppos[ing] any practices forbidden by [RCW 49.60]' or for filing a charge, testifying, or assisting in a discrimination proceeding." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing* RCW 49.60.210(1); *Milligan v. Thompson*, 110 Wn.App. 628, 638, 42 P.3d 418 (2002)).

## A. *McDonnell Douglas* Burden-Shifting Scheme for Retaliation

154. In determining whether an employer has retaliated against an employee in violation of the WLAD, WA courts apply the federal *McDonnell Douglas* burden-shifting scheme that the WA Supreme Court first adopted in *Hill v. BCTI Income Fund-I* for state-law discrimination claims. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hill v. BCTI Income Fund-I*, 144 Wash.2d 172, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wash.2d 214, 137 P.3d 844 (2006)); *Renz v. Spokane*

PLAINTIFF'S COMPLAINT FOR DAMAGES – 67

Exhibit A - Page 67 of 91

*Eye Clinic*, P.S., 114 Wash.App. 611, 618, 60 P.3d 106 (2002); *Milligan v. Thompson*, 110 Wash.App. 628, 638, 42 P.3d 418 (2002).

155. Under this burden-shifting scheme, the employee must first establish a prima facie case of retaliation. *See Short*, 279 P.3d 902 (*citing Renz*, 114 Wash.App. at 618, 60 P.3d 106). If the employee fails to establish a prima facie case, then the defendant employer is entitled to summary judgment as a matter of law. *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440). "If, however, the employee succeeds in establishing a prima facie case, a 'legally mandatory, rebuttable presumption' of retaliation temporarily takes hold, and the burden shifts to the employer to produce admissible evidence of a legitimate, non-retaliatory reason for its adverse employment action." *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440 (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Renz*, 114 Wash.App. at 618, 60 P.3d 106).

156. "If the employer fails to meet its burden, the employee is entitled to an order establishing liability as a matter of law because no issue of fact remains in the case." *Id.* (*citing Hill*, 144 Wash.2d at 181-82, 23 P.3d 440; *Renz*, 114 Wash.App. at 618, 60 P.3d 106). "If the employer provides such legitimate non-retaliatory reason, then the burden shifts back to the employee to show that the employer's reason is actually pretext for what, in fact, was a retaliatory purpose for its adverse employment action." *Id.* (*citing Grimwood*, 110 Wash.2d at 364, 753 P.2d 517; *Renz*, 114 Wash.App. at 618-19, 60 P.3d 106). "If the employee fails to make this showing, however, the employer is entitled to judgment as a matter of law." *Id.* (*citing Hill*, 144 Wash.2d at 182, 23 P.3d 440; *Renz*, 114 Wash.App. at 619, 60 P.3d 106).

PLAINTIFF'S COMPLAINT FOR DAMAGES – 68

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 68 of 91

## B. **Prima Facie Case of Retaliation**

157.    "To establish a prima facie case of retaliation, an employee must show that (1) she engaged in a statutorily protected activity, (2) her employer took adverse employment action against her, and (3) there is a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).

### 1. **Statutorily protected activity**

158.    "*WA courts have ... concluded that employee complaints to a supervisor constitutes a statutorily protected activity.*" *See Id.* (*citing, e.g., Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wash.App. 774, 798-99, 120 P.3d 579 (2005)) (emphasis added). "To prove a statutorily protected activity, it is not necessary that the employer's challenged conduct be unlawful." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz v. Spokane Eye Clinic*, P.S., 114 Wash.App. 611, 619, 60 P.3d 106 (2002)). "[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Id.* (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; (*quoting Graves v. Dep't of Game*, 76 Wash.App. 705, 712, 887 P.2d 424 (1994)).

159.    Plaintiff WINN will recover on his retaliation claim against Defendant TINSLEY because he complained to Defendant TINSLEY and Defendant TINSLEY's supervisory-level employee (Mr. Craig Conard) in Nov. 2015 that Defendant TINSLEY's sexually-harassing behavior towards him was unwelcome and that he wanted the behavior to stop. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, at 912, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing*

PLAINTIFF'S COMPLAINT FOR DAMAGES – 69

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

*Renz*, 114 Wash.App. at 619, 60 P.3d 106; *Ellis v. City of Seattle*, 142 Wash.2d 450, 460, 13 P.3d 1065 (2000) (requiring only an "objectively reasonable belief"). Plaintiff WINN opposed Defendant TINSLEY's illegal activity that violated RCW 49.60 (*i.e*, sexually harassing him) several times, including but not limited to:

- Immediately after the Nov. 2015 incident at Defendant TINSLEY's home/recording studio, when Defendant TINSLEY ejaculated right next to his sleeping employee (Plaintiff WINN) while touching Plaintiff WINN's buttocks, Plaintiff WINN opposed Defendant TINSLEY's illegal activity of sexually assaulting him when he immediately jumped up saying to Defendant TINSLEY in shock, "What the fuck?!" Plaintiff WINN then ran from Defendant TINSLEY as Defendant TINSLEY followed Plaintiff WINN through the recording studio and house. Plaintiff WINN ultimately had to hide in the bathroom to avoid Defendant TINSLEY's continued sexual advances that evening. Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong and he complained to his employer (Defendant TINSLEY) that he wanted the behavior to stop.

- A few hours later, Plaintiff WINN again opposed Defendant TINSLEY's illegal activity that violated RCW 49.60 (*i.e.*, sexually harassing him) when he spoke with Mr. Craig Conard. Crystal Garden's band music engineer and a longtime employee of Defendant TINSLEY's. Plaintiff WINN explained to Mr. Craig Conard in detail the sexual acts that Defendant TINSLEY had inflicted upon him just a few hours prior. Mr. Craig Conard is a longtime employee of Defendant TINSLEY's who worked with Plaintiff WINN and Crystal Garden in the recording of their music. Plaintiff WINN knew that Defendant TINSLEY's sex-based behavior towards him was wrong and he complained to his employer that he wanted the behavior to stop. As such, Plaintiff WINN's complaint to Mr. Craig Conard constitutes Plaintiff WINN opposing Defendant TINSLEY's illegal activity that violated RCW 49.60.

- Defendant TINSLEY tried to convince Plaintiff WINN to stay. Plaintiff WINN again opposed Defendant TINSLEY's illegal activity that violated RCW 49.60 when he flat-out refused to stay, saying that he didn't want to be alone with his employer Defendant TINSLEY due to the unwelcome sexual acts he had just endured form Defendant TINSLEY.

## 2. Adverse Employment Action

160. An adverse employment action is not limited to demotion, termination or reduction in the complaining employee's pay, but rather includes <u>any</u> negative treatment, "workplace

PLAINTIFF'S COMPLAINT FOR DAMAGES – 70

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7716 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 70 of 91

transfer," or "reduction in employee's workload" against the complaining employee that would "dissuade a reasonable worker from making or supporting a complaint [against that employer]."[14]

161. "The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning '*Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position.*'" *Id.* (*citing Tyner v. Dep't of Soc. & Health Servs.*, 137 Wn.App. 545, 565, 154 P.3d 920 (2007) (internal quotation marks omitted) (*quoting Burlington*, 548 U.S. at 71) (emphasis added). "Federal law provides that context matters in analyzing the significance of any given act of retaliation because an 'act that would be immaterial in some situations is material in others.'" *Id.* (*citing Burlington*, 548 U.S. at 69; *quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005)).

162. If an employee submits to a supervisor's threat conditioning employment benefits on sexual activity, the adverse "tangible employment action" requirement is met. *Holly D. v. Cal. Inst. Of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003). *Just three months after Plaintiff WINN opposed Defendant TINSLEY's illegal activity* in Nov. 2015 by complaining to his employer (Defendant TINSLEY) and Defendant TINSLEY's longtime employee (Mr. Craig Conard) that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop, Defendant TINSLEY continued with his repeated sex-based demands of Plaintiff WINN, tying

---

[14] *See Elliott v. Washington Department of Corrections*, 74137-3-I (WA State Ct. of Appeals, Div. I, 2016); *Boyd v. State*, 187 Wn.App. 1, 13, 349 P.3d 864 (Div. 2 2015) (*quating Robel v. Roundup Corp.*, 148 Wn.2d 35, 74 n.24, 59 P.3d 611 (2002); *citing Alonso v. Qwest Commc'ns Co.*, 178 Wn.App. 734, 746, 315 P.3d 610 (2013); *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465, 98 P.3d 827 (2004); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted) (*quoting Rochon v. Gonzales*, 438 F.3d 1211, 1219, 370 U.S.App.D.C. 74 (2006)).

PLAINTIFF'S COMPLAINT FOR DAMAGES -- 71

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Plaintiff WINN's compliance with Defendant TINSLEY's demands to Plaintiff WINN's continued "success" with the band:

- March 2016 – Defendant TINSLEY texted Plaintiff WINN that he wanted to **"sexually exploit him for the band's success."** (emphasis added)

- March 28, 2016, at 10:09 PM – Defendant TINSLEY texted Plaintiff WINN: "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. **Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear ... We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it).** I'm in full jerk right now, catch you later (emphasis added)."

- June 2016 – Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. **Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you."** (emphasis added)

163. Plaintiff WINN ultimately submitted to his employer (Defendant TINSLEY's) threats conditioning Plaintiff WINN's employment benefits on sex-based activity, including but not limited to: Plaintiff WINN complying with Defendant TINSLEY's demand that he send Defendant TINSLEY photos of himself, Plaintiff WINN giving Defendant TINSLEY a pair of his worn/dirty underwear (which Defendant TINSLEY had repeatedly told him "turned him on"), Plaintiff WINN giving Defendant TINSLEY pairs of his worn/dirty socks (which Defendant TINSLEY had told him "turned him on"). Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning employment benefits on sexual activity; as such, the adverse "tangible employment action" requirement is met for retaliation.

PLAINTIFF'S COMPLAINT FOR DAMAGES – 72

Henderson Law Group, PLLC
1800 Cooper Point RD SW., Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

### 3. **Causal Link**

164. The third element required for a plaintiff to establish a prima facie case of retaliation is that there exists a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)). Washington courts have generally labeled this third element as requiring proof of a "causal connection" between the exercise of the legal right and the adverse employment action. *See Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18, 29 (1991). However, the Washington Supreme Court has emphasized that a showing of "but for" causation is not required to establish a *prima facie* case of retaliation. *See*: *Allison*, *supra*, at 89 n.3. Instead, a plaintiff need only show that the protected activity was "a substantial factor" for the adverse action. *See, e.g.*: *Vasquez v. State*, 94 Wn. App. 976, 984, 974 P.2d 348, 352-53 (Div. III, 1999).

165. "Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." *Vasauez v. State*, 94 Wn.App. 976, 985, 974 P.2d 348 (1999). "Proximity in time between the adverse action and the protected activity, coupled with evidence of satisfactory work performance and supervisory evaluations *suggests an improper motive*." *Kahn v. Salerno*, 90 Wn.App. 110, 130-31, 951 P.2d 321 (1998) (emphasis added); *see also Cornwell v. Microsoft Corp.*, 060517 WACA, 74919-6-I (WA Ct. of Appeals, Div. I, 2017).

166. Here, the "causal link" element for retaliation is met. Just three months following Plaintiff WINN opposing Defendant TINSLEY's illegal activity in Nov. 2015 by complaining to his employer (Defendant TINSLEY) and Defendant TINSLEY's longtime employee (Mr. Craig

PLAINTIFF'S COMPLAINT FOR DAMAGES – 73

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel (360) 943-7710 Fax (360) 943-2782
v ww.hendersonlawgroup.com

Exhibit A - Page 73 of 91

Conard) that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop (Plaintiff WINN hereby opposed illegal activity), Defendant TINSLEY continued with his repeated sex-based demands of Plaintiff WINN, tying Plaintiff WINN's compliance with Defendant TINSLEY demands to Plaintiff WINN's continued "success" with the band. Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning Plaintiff WINN's employment benefits on sex-based activity, including but not limited to: Plaintiff WINN complying with Defendant TINSLEY's demand that he send Defendant TINSLEY photos of himself, Plaintiff WINN giving Defendant TINSLEY a pair of his worn/dirty underwear (which Defendant TINSLEY had repeatedly told him "turned him on"), Plaintiff WINN giving Defendant TINSLEY pairs of his worn/dirty socks (which Defendant TINSLEY had told him "turned him on"). Plaintiff WINN submitted to his employer (Defendant TINSLEY's) threats conditioning employment benefits on sexual activity; as such, the adverse "tangible employment action" requirement is met for retaliation.

167. The "causal link" element for retaliation is met. Plaintiff WINN's satisfactory work performance for Defendant TINSLEY (playing the trumpet for "Crystal Garden"), coupled with the proximity in time between Plaintiff WINN opposing illegal activity (*i.e.*, Plaintiff WINN complaining in Nov. 2015 to Defendant TINSLEY and Defendant TINSLEY's longtime employee, Craig Conard, that Defendant TINSLEY's sex-based harassment towards him was not welcome and must stop) and the "tangible employment action" (Plaintiff WINN submitting to Defendant TINSLEY's repeated sex-based demands just three months after Plaintiff WINN's Nov. 2015 complaints opposing Defendant TINSLEY's illegal activity). This *suggests an improper*

PLAINTIFF'S COMPLAINT FOR DAMAGES – 74

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 74 of 91

*motive by Defendant TINSLEY* and meets the "causal link" element for Plaintiff WINN's retaliation claim against Defendant TINSLEY.

## C. Damages for Retaliation in Violation of WLAD/RCW § 49.60

168. As a result of Defendant TINSLEY retaliating against Plaintiff WINN when Plaintiff WINN made complaints to Defendant TINSLEY, telling him to stop sexually harassing him, Plaintiff WINN is entitled to the same damages under the WLAD to which he is entitled for Defendant TINSLEY's hostile work environment and quid pro quo sexual harassment against him (outlined in detail above), which provide for an award of back pay, front pay. impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE
### (WA STATE COMMON LAW TORT)

169. Plaintiff re-alleges and incorporates by reference paragraphs 1-168 of this Complaint.

170. Plaintiff WINN was constructively discharged by his employer, Defendant TINSLEY, in violation of WA State law. WA State recognizes the common law tort of constructive discharge, whereby an employee who quits can establish a wrongful termination claim by proving that his employer deliberately created intolerable working conditions, forcing the employee to resign. *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wn. App. 34, 181 P.3d 864 (Div. II, 2008). *See also*: *Barnett v. Sequim Valley Ranch, LLC*, 41832-1-II; Court of Appeals of Washington, Division 2 (April 30, 2013) (*citing Sneed v. Barna,* 80 Wn.App. 843, 849-50, 912 P.2d 1035, *review denied,* 129 Wn.2d 1023 (1996) ("If a discharge occurred, and if it was wrongful

PLAINTIFF'S COMPLAINT FOR DAMAGES – 75

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W.A 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 75 of 91

for one or more reasons, it is equally actionable whether express or constructive discharge.");
*Korslund v. Dyncorp Tri Cities Services, Inc.*, 156 Wn.2d 168, 180, 125 P.3d 119 (2005) (suggesting wrongful discharge claim can be based on a constructive discharge); *Lavin v. Bon Appetit Mgmt. Co.*, 1998 U.S. Dist. LEXIS 21453, *3 (W.D. Wash. 1998) (holding that constructive discharge claim "cannot be precluded as a matter of law."). *See generally: Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 258-61, 778 P.2d 1031 (1989) (embracing the doctrine of constructive discharge, "[f]or we recognize that insidious acts are able to erode the Legislature's laudable goals just as effectively, and perhaps in a more demoralizing fashion, than a direct termination would otherwise accomplish."

171.    To prove constructive discharge, a plaintiff employee (Plaintiff WINN) "must show that the abusive working environment became so intolerable that his/her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, at 134, 124 S. Ct. 2342 (2004). In the Ninth Circuit, a plaintiff "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions.'" *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.1994).

172.    Here, Defendant TINSLEY's ongoing sexual harassment of his employee, Plaintiff WINN, deliberately created intolerable working conditions for Plaintiff WINN that gave Plaintiff WINN no choice but to either endure Defendant TINSLEY's sexual advances as a condition of his employment – or resign (*i.e.*, constructive discharge). A reasonable person enduring what Plaintiff WINN consistently endured from his employer, (Defendant TINSLEY) during the twelve (12)

PLAINTIFF'S COMPLAINT FOR DAMAGES – 76

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 76 of 91

months leading up to his constructive discharge in August 2016 would, like Plaintiff WINN, have

no choice but to resign from Defendant TINSLEY's employment.

173. The following events of Defendant TINSLEY's sex-based texts, sex-based verbal

demands, and sex-based physical acts towards his employee, Plaintiff WINN, led Plaintiff WINN

to realize that he had no choice by to resign from his employment with Defendant TINSLEY

(including, but not limited to):

- The egregious nature of the Nov. 2015 sexual assault incident where Defendant TINSLEY ejaculated next to his sleeping employee, Plaintiff WINN, while masturbating and touching Plaintiff WINN's buttocks, then chased Plaintiff WINN through the house and nearby recording studio. Plaintiff WINN ultimately had to hide in a bathroom so that Defendant TINSLEY would not find him and continue to sexually harass/assault him.

- The numerous sexual texts messages and other sex-based demands from Defendant TINSLEY to Plaintiff WINN from January-Aug. 2016 (at which time Plaintiff WINN finally felt he had no choice but to resign from his employment with Defendant TINSLEY /constructive discharge due to the ongoing pervasive sexual harassment he was forced to endure), including, but not limited to:

  ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN that he wanted to "sexually exploit him for the band's success."

  ✓ March 2016: Defendant TINSLEY texts Plaintiff WINN that he "was masturbating at the thought of a sexy photo shoot of James."

  ✓ March 2016: Defendant TINSLEY texted Plaintiff WINN, "You're such bone material and I want you at your best. I'm actually masturbating to the thought of your shots. Prob will have you shave your pubes, at least above the cock base. I want you sagging some, with it being obvious that you aren't wearing underwear ... We're going for huge throbbing boner shit (wet pussy included). You are the dirty pretty boy of the band. I have to sexually exploit you as much as I can without looking like (it). I'm in full jerk right now, catch you later (emphasis added)."

PLAINTIFF'S COMPLAINT FOR DAMAGES – 77

Exhibit A - Page 77 of 91

✓ June 2016: Defendant TINSLEY texted Plaintiff WINN, "I just need you to play it like you did when you were cold and hungry on Haight Street. Sere my heart. I love you, my little bunny. :) It was hot as fuck that you did the periscope in dirty socks. That shit's hot. You're already the sex symbol."

✓ June 2016: Defendant TINSLEY texted Plaintiff WINN, "Don't mention to your band mates, but I need your face. It's like the hook. You're all good looking, but you've got this magnetic attraction. Can you take some pics and vids of yourself and send to me? It's really hot when you wear dirty socks, btw ... Dude you're the bait. Our secret (weapon)."

✓ July 2016: Defendant TINSLEY texted Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

✓ July 2016: Defendant TINSLEY responded to Plaintiff WINN that a home work-out would be fine, continuing his text to Plaintiff WINN, in part: "You'll have to put the time in, but you can do it. I have no doubt. If not, I'll put you over my knees and spank you, which case I win either way. :) but seriously, give it a go. Love you. Do y'all need money?" *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ July 2016: Defendant TINSLEY texted Plaintiff WINN: "I need you to work out and eat healthy, I know that you have begun working out, I'm asking that you do it more. Your sex appeal is crucial to this band. You have one of the most beautiful faces of anyone I've ever known. I ask these two things of you in exchange for taking care of you and creating an opportunity for you. It's all just a matter of you thinking of this as a job. Will you do this for me? I love you." *See* Text Screenshot from Defendant TINSLEY to Plaintiff WINN dated July 2016.

✓ July 2016: While on tour in Miami, FL, Defendant TINSLEY asked Plaintiff WINN to give him a pair of Plaintiff WINN's dirty underwear. Plaintiff WINN reluctantly let Defendant TINSLEY take a pair of Plaintiff WINN's dirty underwear that were in the bathroom; Plaintiff WINN felt pressured to do so given all of the lavish gifts Defendant TINSLEY had just bought him. Defendant TINSLEY responded to Plaintiff WINN, "I need you as naked as possible. You can keep your pants on, no belt or

PLAINTIFF'S COMPLAINT FOR DAMAGES – 78

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 78 of 91

underwear or shoes or socks. I want you to be mother nature's son. Dirty beauty. You got it, now let's flaunt it. I'm gonna make you a sex symbol."

174. Plaintiff WINN clearly meets the elements of proving that he was constructively discharged by his employer, Defendant TINSLEY. Plaintiff WINN will present at trial the above-outlined evidence that the abusive working environment created by Defendant TINSLEY became so intolerable for Plaintiff WINN that his resignation qualified as a fitting response.

## A. Damages for Constructive Discharge

175. As a result of Defendant TINSLEY constructively discharging Plaintiff WINN in violation of WA State law, as herein outlined, Plaintiff WINN is entitled to the same damages under the WLAD to which he is entitled for Defendant TINSLEY unlawfully creating a hostile work environment against Plaintiff WINN, inflicting *quid pro quo* sexual harassment against Plaintiff WINN. and retaliating against Plaintiff WINN when Plaintiff WINN complained to Defendant TINSLEY about the harassment and insisted that Defendant TINSLEY stop. Defendant TINSLEY committing the common law tort of constructive discharge against Plaintiff WINN entitles Plaintiff WINN to an award of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain & suffering, loss of quality of life, and attorney's fees and costs.

## VII. PRAYER FOR RELIEF

WHEREFORE PLAINTIFF PRAYS for relief that judgment be entered against Defendant as follows:

A. For actual and/or general damages in an amount to be proven at trial;

PLAINTIFF'S COMPLAINT FOR DAMAGES – 79

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710 Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 79 of 91

B.   Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation in an amount to be proven at trial;

C.   For back pay, front pay, and loss of future earning potential;

D.   Prejudgment interest in an amount to be proved at trial;

E.   Compensation for any tax penalty associated with a recovery;

F.   Judgment in favor of the Plaintiff;

G.   Reasonable attorney's fees and costs;

H.   Lost fringe benefits; and

I.   For such other and further relief as may be proven or that the court may deem just and equitable.

DATED this 17th day of ___May___, 2018.

HENDERSON LAW GROUP, PLLC

Stephanie Henderson Stocker
WSBA No. 33567
1800 Cooper Pt. Rd. SW, Bldg. 1
Olympia, WA 98502
Email: stephanie@hendersonlaw.net
Tel: (360) 943-7710
Fax: (360) 943-2782
Attorney for Plaintiff

PLAINTIFF'S COMPLAINT FOR DAMAGES – 80

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, WA 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 80 of 91

1

2

3

4    Jason Hatch

5    WSBA No. 31798
     368 Newell St
6    Seattle, WA 98109-1858
     Tel: (206) 227-2916
7    Fax: (206) 216-5853
     Email: jayhatch11@gmail.com
8    Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES – 81

Henderson Law Group, PLLC
1800 Cooper Point RD SW, Bldg. One
Olympia, W', 98502
Tel. (360) 943-7710  Fax (360) 943-2782
www.hendersonlawgroup.com

Exhibit A - Page 81 of 91

## CERTIFICATION OF PLAINTIFF

**JAMES WINN**, hereby certifies as follows:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint, know the contents thereof, and believe the same to be true. I certify and declare that the foregoing is true and correct, under penalty of perjury under the laws of the State of Washington, RCW 9A.72.085.

DATED at **Seattle**, Washington, this **14** day of **May**, 2018.

**JAMES WINN**

PLAINTIFF'S COMPLAINT FOR DAMAGES – page 82

Henderson Law Group, PLLC
P.O. Box 11069
1800 Cooper Point RD SW, Bldg. 1
Olympia, WA 98508
Phone (360) 943-7710
Fax (360) 943-2782